### In re PIONEER HI–BRED INTERNATIONAL, INC., Petitioner.

### Misc. No. 661.

United States Court of Appeals, Federal Circuit.

Feb. 5, 2001.

Andrew Rothschild, Lewis, Rice & Fingersh, L.C., of St. Louis, Missouri, for petitioner, Pioneer Hi–Bred International, Inc. Of counsel on the brief was Brian B. O'Neill, Faegre & Benson LLP, of Minneapolis, Minnesota.

Joseph P. Conran, Husch & Eppenberger, LLC, of St. Louis, Missouri, for respondent, Monsanto Company. On the brief was Richard L. Stanley, Howrey, Simon, Arnold & White LLP, of Houston, Texas.

Before MAYER, Chief Judge, BRYSON and DYK, Circuit Judges.

## ORDER

DYK, Circuit Judge.

Pioneer Hi–Bred International, Inc., ("Pioneer") petitions for a writ of mandamus to direct the United States District Court for the Eastern District of Missouri to vacate its orders vitiating Pioneer's attorney-client or work product privilege and requiring Pioneer's in-house counsel to answer questions relating to certain subject matters and produce documents that are no longer protected by privilege. Monsanto Company ("Monsanto") opposes. Pioneer replies.

## BACKGROUND

Monsanto sued Pioneer for breach of contract, patent infringement, and misappropriation of trade secrets. Monsanto's complaint asserts that two license agreements between Monsanto and Pioneer, concerning Monsanto's patent for a genetic technology that confers resistance in soybeans and canola to a herbicide, did not survive the merger of Pioneer into Delta Acquisition Sub, Inc., a wholly owned subsidiary of E.I. duPont de Nemours and Company, Inc ("duPont").

Through discovery, Monsanto sought information relating to the merger. Pioneer designated its in-house counsel as its representative, pursuant to Fed.R.Civ.P. 30(b)(6), to answer Monsanto's deposition questions. During the deposition, Monsanto sought information relating to analysis of the financial benefits stemming from the merger, including tax consequences, and information concerning an analysis that was performed regarding the effect of the merger on Pioneer's licenses. Pioneer's in-house counsel invoked the attorney-client privilege in some instances.

Monsanto moved to compel Pioneer's in-house counsel to respond to the deposition questions relying, *inter alia,* on Pioneer's disclosures in a Securities and Exchange Commission ("SEC") proxy statement.[1] The district court granted the motion to compel responses to two lines of inquiry. As clarified by a second order these were: (1) "analysis of the financial benefit and tax consequences of the merger to the original Pioneer's shareholders"; and (2) "the original Pioneer's analysis of the merger's ramifications for its existing technology licenses, and discussions between the original Pioneer and duPont, or between the original Pioneer and duPont's counsel, Skadden, Arps, on this issue." The district court stated:

> The Court is persuaded by Monsanto's arguments and the authorities cited in support that attorney opinions, and communications between the original Pioneer or the defendant and its counsel, concerning tax and intellectual property implications of the merger were never privileged because their end result was intended to be disclosed to the public and the SEC, and was so disclosed, in the proxy statement the original Pioneer was required to make under federal securities laws. The Court is further persuaded, limited to the facts and circumstances presented in this instance, that, if ever privileged, the protection applying to these opinions and communications has been waived by defendant's disclosure of the opinions to expert witnesses, by the original Pioneer's disclosure of the opinions to duPont during

the merger negotiations, and perhaps by defendant's designation of in-house counsel as its Rule 30(b)(6) representative.

On the parties' cross-motions for reconsideration of the court's order, the district court clarified its order in certain respects. The district court noted, *inter alia,* that its ruling regarding privilege would also apply to documents. The district court ordered Pioneer to produce its in-house counsel for further deposition and to produce "all documents pertinent to these same subject matters which have previously been withheld on a claim of work product or attorney-client privilege" no later than January 19, 2001. On January 18, 2001, this court stayed the district court's order.

## DISCUSSION

■■■ The remedy of mandamus is available only in extraordinary situations to correct a clear abuse of discretion or usurpation of judicial power. *In re Calmar, Inc.,* 854 F.2d 461, 464, 7 USPQ2d 1713, 1715 (Fed.Cir.1988).[2] A party seeking a writ bears the burden of proving "that its right to issuance of the writ is clear and indisputable, ... and that it lacks adequate alternative means to obtain the relief sought." *In re Spalding Sports Worldwide, Inc.,* 203 F.3d 800, 804, 53 USPQ2d 1747, 1750 (Fed.Cir.2000) (quoting *In re Regents of Univ. of Cal.,* 101 F.3d 1386, 1387, 40 USPQ2d 1784, 1785 (Fed.Cir.1996)). *See also Mallard v. U.S. Dist. Court for the Southern Dist. of Iowa,* 490 U.S. 296, 309, 109 S.Ct. 1814, 104

---

1. In the proxy filed with the SEC, it is stated that the discussion concerning federal income tax consequences "is the opinion of Skadden, Arps, Slate, Meagher & Flom LLP, special counsel to duPont, and Fried, Frank, Harris, Shriver & Jacobson, special counsel to Pioneer...." The proxy statement also included the merger agreement, which contained a representation by Pioneer that it had certain intellectual property rights, which included by definition licenses.

2. When the issue of waiver of the attorney-client privilege arises on appeal, rather than through a petition for writ of mandamus,

there is a conflict among courts of appeals on whether review of the district court's decision is *de novo* or for abuse of discretion. *Compare Chaudhry v. Gallerizzo,* 174 F.3d 394, 402 (4th Cir.1999) ("We review the district court's decision that certain documents are subject to privilege *de novo* ... ") *with In re Grand Jury Proceedings,* 219 F.3d 175, 182 (2d Cir.2000) ("[W]e review a district court's finding of waiver of the attorney-client and work-product privileges for abuse of discretion"). However, it appears that virtually all circuits review the decision of a district court underlying a petition for writ of mandamus for abuse of discretion.

L.Ed.2d 318 (1989); *Allied Chem. Corp. v. Daiflon, Inc.,* 449 U.S. 33, 35, 101 S.Ct. 188, 66 L.Ed.2d 193 (1980). However, a writ of mandamus "may be sought to prevent the wrongful exposure of privileged communications." *In re Regents,* 101 F.3d at 1387, 40 USPQ2d at 1785.

■ With respect to the privilege questions, we apply the law of the United States Court of Appeals for the Eighth Circuit. *See In re Regents,* 101 F.3d at 1390, n. 2, 40 USPQ2d at 1787, n. 2 ("For procedural matters that are not unique to patent issues, we apply the perceived law of the regional circuit.").[3] The parties are in general agreement that the Eighth Circuit's seminal case on this attorney-client privilege issue is *United States v. Cote,* 456 F.2d 142 (8th Cir.1972). In *Cote,* the Eighth Circuit held that the filing of amended returns by taxpayers communicated, at least in part, the substance of information contained in workpapers given to an attorney by an accountant. Because the information had been communicated to the government, the Eighth Circuit held that the taxpayers "must now disclose the detail underlying the reported data." *Id.* at 144. The Eighth Circuit stated that because the attorney-client privilege attached to the "substance of a communication" and "not to the particular words used," the taxpayers had "effectively waived the privilege not only to the transmitted data but also as to the details underlying that information." *Id.* The Eighth Circuit explained that the district court could, *in camera,* determine whether particular workpapers contained detail of unpublished material which was not part of the data revealed on the tax returns and which would not need to be disclosed. *Id.* at 145, n. 4. *Compare United States v. Workman,* 138 F.3d 1261, 1263 (8th Cir. 1998) (regarding evidentiary rulings, the waiver of attorney-client communications

"covers any information directly related to that which was actually disclosed").

The Eighth Circuit in *Cote* apparently followed the theory that the attorney-client privilege had been waived by the disclosure, but noted that some courts have stated that the privilege never attaches because the information is intended to be reported to the government. The district court stated in the present case that the privilege had not attached and alternatively found that it had been waived.

■■ We believe that the district court has misunderstood the scope of attorney-client privilege. A party does not forego the attorney-client privilege with respect to merger negotiations by disclosing the existence of the merger, the negotiations between the parties concerning the merger, or the property rights of the respective parties, and a waiver occurs only when a party relies on or discloses advice of counsel or other privileged information in connection with the merger. *See Upjohn Co. v. United States,* 449 U.S. 383, 395, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) ("The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney."); *United States v. El Paso Co.,* 682 F.2d 530, 538 n. 10 (5th Cir.1982) (stating that public disclosure of certain facts does not destroy attorney-client privilege with respect to attorney-client communications about those facts). Such reliance and disclosure occurred here only in a limited area-the advice received from Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden, Arps") and Fried, Frank, Harris, Shriver & Jacobson ("Fried, Frank") concerning the tax consequences of the merger. The disclosure of that advice and reliance on that advice waived the attorney-client privilege with respect to all documents which

---

**3.** Of course, "Federal Circuit law applies when deciding whether particular written or other materials are discoverable in a patent case," at least if that issue clearly implicates substantive patent law. *In re Spalding Sports Worldwide, Inc.,* 203 F.3d 800, 803, 53 USPQ2d 1747, 1750 (Fed.Cir.2000). So far as we can determine, no substantive patent law is implicated in the privilege issues that are before us. In any event, we would reach the same result applying Federal Circuit law.

formed the basis for the advice, all documents considered by counsel in rendering that advice, and all reasonably contemporaneous documents reflecting discussions by counsel or others concerning that advice. *See Cote,* 456 F.2d at 144. (Such documents apparently may include an analysis of intellectual property rights.) Oral testimony on these specific matters should also be allowed. The disclosure and reliance on tax advice here did not waive the attorney-client privilege with respect to other matters. In particular, there has also been no showing that the proxy statement disclosed or relied on the advice of counsel or other privileged information with respect to the merger itself, the merger negotiations, the financial benefits of the merger (other than tax benefits), or the effect of the merger on intellectual property rights. Accordingly, the district court's order is vacated except to the extent that it compelled production of documents and compelled testimony concerning the advice received from Skadden, Arps and from Fried, Frank regarding tax consequences.

It also appears that (in addition to the attorney-client privilege) Pioneer asserted the protection for attorney work product in resisting disclosure because of the dissemination of the proxy; the district court found that both attorney-client privilege and work product protection were inapplicable. We cannot determine from this record what documents and information were alleged to be protected work product or the basis for the work product claim. We leave to the district court to determine, in the light of our disposition of the attorney-client privilege claim, whether there are any remaining issues of work product protection related to the proxy disclosure that require resolution in further proceedings.

■ The district court also found that the attorney-client privilege and any work product protection had been waived by disclosure of confidential communications to expert witnesses. We agree.

■ Although there is some contrary authority at the district court level, *see, e.g., Nexxus Prods. Co. v. CVS New York, Inc.,* 188 F.R.D. 7, 10 (D.Mass.1999), the 1993 amendments to Rule 26 of the Federal Rules of Civil Procedure make clear that documents and information disclosed to a testifying expert in connection with his testimony are discoverable by the opposing party, whether or not the expert relies on the documents and information in preparing his report. Rule 26(a)(2) requires that the testifying expert's report "contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; . . . ." The accompanying Advisory Committee Note explicitly states that "[t]he report is to disclose the data and other information considered by the expert. . . . Given this obligation of disclosure, litigants should no longer be able to argue that materials furnished to their experts to be used in forming their opinions—whether or not ultimately relied upon by the expert—are privileged or otherwise protected from disclosure when such persons are testifying or being deposed." *See also TV–3, Inc. v. Royal Ins. Co. of Am.,* 194 F.R.D. 585, 589 (S.D.Miss. 2000) (correspondence between counsel and expert witness is discoverable, "given plain language of Rule 26(a)(2) and its accompanying Advisory Committee Note"). The revised rule proceeds on the assumption that fundamental fairness requires disclosure of all information supplied to a testifying expert in connection with his testimony. Indeed, we are quite unable to perceive what interests would be served by permitting counsel to provide core work product to a testifying expert and then to deny discovery of such material to the opposing party.

■ Thus, because any disclosure to a testifying expert in connection with his testimony assumes that privileged or protected material will be made public, *Cote,* 456 F.2d at 144–45 & n. 3, there is a

waiver to the same extent as with any other disclosure. (However, disclosure to a testifying expert of the party's legal position and contentions, while discoverable information, generally is not a waiver as to underlying information since the disclosed information was not privileged or otherwise protected in the first place.)

Here the record does not show the extent of disclosure to testifying experts, and absent a proper record, such disclosure cannot be the basis for ordering production. There is indeed an affidavit from in-house counsel for Pioneer stating that he "did not have any discussions with Mr. Milgrim [an expert witness] relating to my analysis of the financial benefit and tax consequences of the merger to the original Pioneer shareholders or the relevance to the merger of the original Pioneer's analysis of the merger's ramifications for its existing technology licenses." In further proceedings, the district court may allow inquiry into the matters disclosed to the expert witnesses, and order production of documents or compel oral testimony with respect to the matters disclosed.

 The district court also suggested that offering corporate counsel to testify as a Rule 30(b)(6) witness on factual matters might have waived the privilege and any work product protection. We do not agree. *See, e.g., Motley v. Marathon Oil Co.,* 71 F.3d 1547, 1552 (10th Cir.1995) (stating that mere designation of counsel as corporate representative for deposition pursuant to Fed.R.Civ.P. 30(b)(6) does not waive attorney-client privilege). Counsel is often a fact witness with respect to various events, and may testify on deposition by the opposing party as to such matters without waiver. A different result would obtain, of course, if counsel were offered to testify as to privileged or protected matters and might obtain if counsel were offered as a fact witness at trial by his client. *See United States v. Nobles,*

422 U.S. 225, 239, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975).[4]

Accordingly,

IT IS ORDERED THAT:

Pioneer's petition for a writ of mandamus is granted to the extent stated above.

---

**4.** Pioneer also argues that the district court incorrectly determined that it had waived any privilege due to communications with duPont during merger negotiations. Monsanto does

not respond to Pioneer's challenge, and we consider that ground for waiver of the privilege to have been abandoned by Monsanto.