**Ronnie WEIL a/k/a Ronnie Moore, et al., Plaintiffs,**

v.

**The LONG ISLAND SAVINGS BANK FSB, et al., Defendants.**

No. CV 94–1292(TCP)(WDW).

United States District Court, E.D. New York.

Oct. 11, 2001.

John B. Amrod, Amrod & Ricci, Garden City, NY, Louis Aloysius Jr. Craco, Jr., Davis Weber & Edwards, P.C., New York City, for plaintiffs.

Russell E. Brooks, Milbank, Tweed, Gadley, McCloy, New York City, Paul F. Corcoran, Davis & Gilbert, New York City, Thomas P. Puccio, New York City, Joel Cohen, Stroock & Stroock & Lavan LLP, New York City, for defendants.

### ORDER

WALL, United States Magistrate Judge.

Before the court is a letter motion by the Bank defendants to compel production of plaintiffs' counsels' comments on drafts of expert reports by Grant E. Mitchell, Geoffrey Miller, Bruce E. Ingbretsen and Philip

Upton, and other communications between the plaintiffs' attorneys and their experts. See Hirschfeld Letter dated August 9, 2001. By letter dated August 20, 2001, the plaintiffs oppose the motion. See Edwards Letter. For the reasons set forth herein, the motion is granted, and the plaintiffs are ordered to produce those documents described *infra* within 10 days of the date of this order.

### DISCUSSION

The issue presented on this motion is the extent to which an attorney's written communications with a testifying expert must be disclosed, despite the work product protection that might otherwise apply. The answer rests in the interpretation of Fed.R.Civ.P. 26(a)(2)(B), which mandates disclosure of all information "considered" by an expert in forming his or her opinion, and that Rule's tension with Fed.R.Civ.P. 26(b)(3), which codifies the work product doctrine. Prior to 1993, information about experts was obtained largely through interrogatories, and "courts held widely divergent views as to the discoverability of work product information that had been shared between counsel and a testifying expert." *Karn v. Ingersoll–Rand*, 168 F.R.D. 633, 635–36 (N.D.Ind.1996)(citing *Intermedics, Inc. v. Ventritex, Inc.*, 139 F.R.D. 384 (N.D.Cal.1991)). In 1993, the Rule was amended to address the issue, but the divergence of views has continued.

Pursuant to the 1993 amendments, Fed. R.Civ.P. 26(a)(2)(B) now requires that testifying experts must submit a written report containing "a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions;" and other material. The Advisory Committee Notes to the 1993 Amendments state that the expert report must "disclose the data and other information considered by the expert and any exhibits or charts that summarize or support the expert's opinions. Given this obligation of disclosure, litigants should no longer be able to argue that materials furnished to their experts to be used in forming their opinions—whether or not ultimately relied upon by the expert—are privileged or otherwise protected from disclosure when such persons are testifying or being deposed." Unfortunately, the Advisory Committee's suggestion that "litigants should no longer be able to argue" that core attorney work product provided to experts for their consideration is protected in light of the amendment to the Rule underestimates litigants' argumentative proclivities, and the debate rages on.

■ The Second Circuit has not ruled on the issue of whether and to what degree the work product privilege applies to material presented to an expert witness who will testify at trial, and other courts are divided. The Court of Appeals for the Federal Circuit, the only Circuit to address this issue, noting contrary authority at the district court level, held that "the 1993 amendments to Rule 26 . . . make clear that documents and information disclosed to a testifying expert in connection with his testimony are discoverable by the opposing party, whether or not the expert relies on the documents and information in preparing his report," including core attorney work product. *In re Pioneer Hi–Bred Int'l, Inc.*, 238 F.3d 1370, 1375 (Fed.Cir. 2001).

Courts in numerous jurisdictions have concurred with the Federal Circuit's ruling, basing their rulings on the plain language of the amended rule, the Advisory Committee Notes, and various policy considerations. *See, e.g., In re Air Crash at Dubrovnik, Croatia on April 3, 1996*, 2001 WL 777433, at *3, 2001 U.S. Dist. LEXIS 14334, at *8 (D. Conn. June 4, 2001); *Amway Corp. v. Procter & Gamble Co.*, 2001 U.S. Dist. LEXIS 5317, at *3 (W.D.Mich. Apr. 17, 2001); *Suskind v. Home Depot Corp.*, 2001 WL 92183, *5, 2001 U.S. Dist. LEXIS 1349 (D.Mass. Jan. 2, 2001); *Johnson v. Gmeinder*, 191 F.R.D. 638, 645 (D.Kan.2000); *Simon Prop. Group, L.P. v. mySimon, Inc.*, 194 F.R.D. 644, 647 (S.D.Ind.2000); *TV–3, Inc. v. Royal Ins. Co. of America*, 193 F.R.D. 490, 491, *aff'd*, 194 F.R.D. 585, 589 (S.D.Miss.2000); *W.R. Grace & Co.-Conn. v. Zotos, Int'l*, 2000 WL 1843258, at *3–4, 2000 U.S. Dist. LEXIS 18096, at *10–11 (W.D.N.Y. Nov. 2, 2000) (citing two additional, unpublished W.D.N.Y. decisions); *Culbertson v. Shelter Mut. Ins. Co.*, 1999 WL 109566, 1999 U.S. Dist. LEXIS

2295 (E.D.La. Mar. 2, 1999); *Lamonds v. General Motors Corp.*, 180 F.R.D. 302, 305 (W.D.Va.1998); *F.D.I.C. v. First Heights Bank, FSB*, 1998 U.S. Dist. LEXIS 21506, at *13 (E.D.Mich. Mar. 3, 1998); *Baerga v. Hospital for Special Surgery*, 1998 U.S. Dist. LEXIS 17716, at *1 (S.D.N.Y. Nov. 9, 1998); *B.C.F. Oil Ref., Inc. v. Consolidated Edison Co.*, 171 F.R.D. 57, 66 (S.D.N.Y.1997); *Barna v. United States*, 1997 WL 417847, at *2, 1997 U.S. Dist. LEXIS 10853 (N.D.Ill. July 18, 1997); *Musselman v. Phillips*, 176 F.R.D. 194, 202 (D.Md.1997); *Furniture World, Inc. v. D.A.V. Thrift Stores*, 168 F.R.D. 61 (D.N.M.1996); *Karn v. Ingersoll–Rand*, 168 F.R.D. 633, 635–36 (N.D.Ind.1996); *Baxter Diagnostics, Inc. v. AVL Scientific Corp.*, 1993 WL 360674, 1993 U.S. Dist. LEXIS 11798 (C.D.Cal. Aug. 6, 1993).

Other courts, loathe to abrogate the broad protection historically given to core attorney work product, have held that the amended rule does not "annul the attorney work product privilege 'and the laudable policies behind it, in the absence of clear and unambiguous authority under the Federal Rules of Civil Procedure.'" *Nexxus Prods. Co. v. CVS New York, Inc.*, 188 F.R.D. 7, 9 (D.Mass.1999) (quoting *Magee v. Paul Revere Life Ins. Co.*, 172 F.R.D. 627, 642 (E.D.N.Y.1997) (limiting application of Rule 26(a)(2)(B) "only to factual materials and not to core attorney work product considered by an expert.")). *See also Smith v. Transducer Tech., Inc.*, 197 F.R.D. 260, 262 (D.Vi.2000); *Estate of Phillip P. Chopper v. R.J. Reynolds Tobacco Co.*, 195 F.R.D. 648, 651–52 (N.D.Iowa 2000); *Krisa v. Equitable Life Assur. Soc'y*, 196 F.R.D. 254, 259 (M.D.Pa.2000); *Estate of Carl J. Moore v. R.J. Reynolds Tobacco Co.*, 194 F.R.D. 659, 663–64 (S.D.Iowa 2000); *Ladd Furniture, Inc. v. Ernst & Young*, 1998 WL 1093901, at *12–13, 1998 U.S. Dist. LEXIS 17345, at *44–46 (M.D.N.C. Aug. 27, 1998); *New Mexico Tech. Research Found. v. Ciba–Geigy Corp.*, 1997 WL 576389, at *5 (D.R.I. Jan.3, 1997); *Haworth, Inc. v. Herman Miller, Inc.*, 162 F.R.D. 289, 294–95 (W.D.Mich.1995) ("this Court concludes that the protection accorded an attorney's mental impressions and opinions by the Supreme Court in *Hickman v. Taylor* (citation omitted) and substantially codified in 1970 in Rule 26(b)(3), was intended to apply to discovery from experts. . . . For the high privilege accorded attorney opinion work product not to apply would require clear and unambiguous language in a statute. . . . No such language appears" in Rule 26(a)(2)(B)); *All West Pet Supply Co. v. Hill's Pet Prods.*, 152 F.R.D. 634, 638 (D.Kan.1993).

The leading federal practice treatises are equally divided. *Compare* 8 Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice & Procedure § 2016.2 (1994) ("At least with respect to experts who testify at trial, the disclosure requirements of Rule 26(a)(2), adopted in 1993, were intended to pretermit further discussion and mandate disclosure despite privilege.") and § 2031.1 (1994)("It appears that counsel should now expect that any written or tangible data provided to testifying experts will have to be disclosed."); *with* 6 Moore's Fed. Practice, § 26.80[1][a] (3rd ed. 2001)("The *Haworth* holding is meritorious, because nothing in the advisory committee notes to the 1993 amendments (citation omitted) suggests that Rule 26(b)(4)(A) was intended to abrogate the enhanced protection for opinion work product recognized by the Supreme Court in *Upjohn v. United States*, 449 U.S. 383, 401, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981).")

This court finds that the 1993 revision to Rule 26(a)(2)(B) does not exempt "core" work product from the disclosure requirement, nor does it limit disclosure to factual material as opposed to mental impressions or opinions of counsel. This result is mandated by the plain language of the Rule itself, and is buttressed by both the explicit Advisory Committee comments, and the weight of authority cited *supra*. The cases holding otherwise, in their effort to balance the competing values of open disclosure and the goals of the work product doctrine set out in *Hickman v. Taylor*, 329 U.S. 495, 511, 67 S.Ct. 385, 91 L.Ed. 451 (1947) and codified in Rule 26(b)(3), come down on the side of work product protection. While this court recognizes the important values inherent in the work product privilege, that privilege is not absolute and must give way to disclosure of core work product considered by testifying experts.

This result rests on significant policy considerations. First, requiring disclosure of all material considered by the expert, including core attorney work product, will help promote more effective cross-examination, and will reveal the extent, if any, of the influence counsel may have had on the expert's testimony. Such revelation is essential, given the current role of expert testimony in federal litigation. The use of expert testimony has grown exponentially over the last decades, and it presents unique challenges to the fact finder faced with the task of weighing the credibility of an expert witness. To qualify, experts must possess some scientific, technical or other specialized knowledge that will help the finder of fact understand the evidence in a case or determine a case in issue. See Fed.R.Evid. 702. Accordingly, "an expert's testimony takes on added significance because it usually focuses on subjects about which the fact finder has little or no knowledge." *Musselman,* 176 F.R.D. at 199. "As the Supreme Court has observed, expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it." *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 595, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The trial judge thus "depends upon the efficacy of cross-examination by the party opposing the expert's testimony to point out any weaknesses which might affect its admissibility, as does the jury in determining how much weight to give to the expert's testimony." *Musselman,* 176 F.R.D. at 200. Given the importance that expert testimony can assume, "a jury is entitled to know everything that influenced an expert's opinion in order to assess his credibility," including legal theories or conclusions about a case that an attorney has shared that may have shaped the expert's opinion. *Barna,* 1997 WL 417847 at *2.

Several courts have commented on the potential for undue attorney influence on the expert. "Although it is not improper for an attorney to assist a retained expert in developing opinion testimony for trial—as the commentary to Rule 26 suggests—opposing counsel must be free during discovery to determine the nature and extent of this collaboration, in order to ascertain whether the opinion which is to be offered at trial is that of the expert, as opposed to the attorney." *Id.* at 201. Without disclosure of information and opinions shared between counsel and expert, "expert testimony may become another way in which counsel places his view of the case or the evidence in front of the jury. The real danger is that this view, when espoused by an expert, is presented to the jury with an air of authority and a stamp of scientific validity, and opposing counsel might be left without a solid basis for cross-examination." *Barna,* 1997 WL 417847 at *2; *see also Karn,* 168 F.R.D. at 639, 640 ("[T]he impact of expert witnesses on modern-day litigation cannot be overstated; yet, to some, they are nothing more than willing musical instruments upon which manipulative counsel can play whatever tune desired.... Without pre-trial access to attorney-expert communications, opposing counsel may not be able to effectively reveal the influence that counsel has achieved over the expert's testimony."); *TV-3, Inc.,* 193 F.R.D. at 492 ("[O]nly the most naive of experienced lawyers or judges could fail to realize that in our present legal culture money plus the proper 'marching orders' will get an 'expert' witness who will undertake to prove most anything."); *Intermedics,* 139 F.R.D. at 396 (the "trier of fact has a right to know who is testifying").

In this regard, this court is not persuaded by the observation in *Haworth,* cited in several other opinions, that "the risk of an attorney influencing an expert witness does not go unchecked in the adversarial system, for the reasonableness of an expert opinion can be judged against the knowledge of the expert's field and is always subject to the scrutiny of other experts." 162 F.R.D. at 295–96. This reasoning does not explain how the requisite "knowledge of the expert's field" will be presented to the fact finder, nor the ways in which attorney influence on the "other experts" whose scrutiny will test the reasonableness of the first expert could in turn be tested. The more direct solution to this potentially protracted battle of the experts is for both sides to be required to disclose all information considered by their experts.

The court does not suggest that anything improper has been done by the plaintiffs'

lawyers here. Indeed, the thoroughness of the plaintiff's privilege log, which identifies the documents now at issue, is to be commended. Nonetheless, documents listed on that log that were considered by a testifying expert must be disclosed, despite any work product protection that might otherwise apply.

Nor does this court find that the fundamental goals of the work product doctrine are unduly controverted by this requirement. When the Supreme Court recognized the work product doctrine in *Hickman*, long before expert testimony attained the prevalence it now has, the Court acknowledged that "it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference." 329 U.S. at 510–11, 67 S.Ct. 385. If the work product privilege is intended to keep private the opinions of the attorney, that interest is not served by allowing an expert to consider those opinions and present them in the guise of the expert's own opinion. *See Musselman*, 176 F.R.D. at 201 (work product interests not served when attorney discloses opinions or theories to expert "in order to shape opinion testimony to be offered at trial.") It is the lawyer who retains the expert and who decides whether to provide that expert with material that might otherwise be protected by the work product doctrine. If an attorney wants to keep her opinions private, she should not communicate them to her expert witness. *See Lamonds*, 180 F.R.D. at 306; *Baerga*, 1998 U.S. Dist. LEXIS 17716, at *1.

Moreover, core work product, although accorded a high degree of protection, is not absolutely immune from production. The Second Circuit has held that a party seeking work product that shows "mental impressions, conclusions, opinions, or legal theories of an attorney" must make a "highly persuasive showing" of need in order to obtain such material. *In re Grand Jury Proceedings*, 219 F.3d 175, 190 (2d Cir.2000) (citing *United States v. Adlman*, 134 F.3d 1194, 1204 (2d Cir.1998)). This court finds that the need for disclosure of all materials considered by a testifying expert rises to that level, for the policy reasons set forth *supra*.

Even the *Hickman* court recognized that a rule or statute that "definitely proscribed otherwise" could circumvent the work product doctrine. 329 U.S. at 514, 67 S.Ct. 385. A number of the courts that continue to protect core work product that has been communicated to experts base their rulings, in part, on a finding that the language of the amended rule does not provide a sufficiently "clear and unambiguous" basis for full disclosure, and that the amended rule thus does not "definitely proscribe" the *Hickman* rule of work product protection. This court respectfully disagrees.

The 1993 amendments, *inter alia*, added subsection (a)(2) to require the production of all materials "considered" by the expert in forming his opinions. As the *Karn* court noted, the "drafters of the new Rule clearly contemplated that the term 'considered' was something different than the term 'relied,' given that they rejected an earlier draft version of subdivision (a)(2), which required that the expert's report set forth 'the data or other information relied upon in forming such opinions.' 137 F.R.D. 53, 89 (1991) (additional citation omitted)." *Karn*, 168 F.R.D. at 635. " 'Considered,' which simply means 'to take into account,' clearly invokes a broader spectrum of thought than the phrase 'relied upon,' which requires dependence on the information." *Id.* (citing Webster's New Riverside Univ. Dictionary at 301, 993 (1984) & *Baxter Diagnostics, Inc. v. AVL Scientific Corp.*, 1993 WL 360674, 1993 U.S. Dist. LEXIS 11798 (C.D.Cal. Aug. 6, 1993)(court defined word "considered" as encompassing not only documents upon which the experts relied in forming their opinions but also those documents reviewed by the experts as well)). This court agrees that the choice of the broader word "considered," in conjunction with the Advisory Committee's explanation that it thought the change would forestall future argument about the application of privilege to documents considered by the expert, convinces this court that the 1993

amendment "definitely proscribes" work product protection in this context.

Applying these rulings to the plaintiffs' documents, the court orders that the plaintiffs produce all documents on the privilege log that represent materials communicated to the testifying experts by the attorneys and considered by those experts in forming their opinions. The plaintiffs note that they have withdrawn their objections to log items 5, 6,15, 17, 19, 20, 26, 33 and 41, leaving at issue "communications relating to matters other than the substance of the testimony ... invoices ... and draft reports...." Edwards letter at n. 1. As to the draft reports, this court holds that they must be produced. *See B.C.F.*, 171 F.R.D. at 62; *W.R. Grace*, 2000 WL 1843258 at *15–17. The court finds that Items 1–4 and 12–14, as described by the plaintiffs in footnote 3 to their letter, along with Item 11, would seem to fall outside the scope of those documents that must be produced, inasmuch as it is likely these documents were not considered by the experts in forming their opinions. The same is true of the invoices listed as Items 25, 34 and 27. *See B.C.F.*, 171 F.R.D. at 61. Items 32 and 39 are more ambiguous, and may have to be reviewed by the court. Documents alleged by the plaintiffs to be "unrelated to the substance of the testimony" so as to exempt them from disclosure shall be submitted for *in camera* inspection within ten days of the date of this order, if agreement cannot be reached between the parties as to their production.

**SO ORDERED:**