# United States Court of Appeals for the Federal Circuit

---

**IN RE SHARED MEMORY GRAPHICS LLC,**
*Petitioner.*

---

Miscellaneous Docket No. 978

---

On Petition for Writ of Mandamus to the United States District Court for the Northern District of California in case no. 10-CV-2475, Judge Maxine M. Chesney.

---

**ON PETITION**

---

ARTHUR GOLLWITZER, III, F&B LLP, of Austin, Texas, for petitioner Shared Memory Graphics LLC. With him on the petition were ADAM V. FLOYD and CHAD ENNIS.

GRANT E. KINSEL, Perkins Coie LLP, of Los Angeles, California, for respondents Nintendo Co., Ltd., et al.

---

Before NEWMAN, SCHALL, and DYK, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* DYK. Dissenting opinion filed by *Circuit Judge* NEWMAN.

DYK, *Circuit Judge.*

## **O R D E R**

Shared Memory Graphics LLC ("SMG") petitions for a writ of mandamus to direct the United States District Court for the Northern District of California to vacate its order granting Nintendo Co. of America's ("Nintendo") motion to disqualify the law firm of Floyd & Buss, LLP from further representation in this case based on the conflict-of-interest of Kent Cooper, one of the firm's partners. *See Shared Memory Graphics LLC v. Apple Inc.*, No. 10-CV-2475 (N.D. Cal. Dec. 17, 2010) (granting Nintendo's motion to disqualify) [hereinafter *Disqualification Order*]; *see also Shared Memory Graphics LLC v. Apple Inc.*, No. 10-CV-2475 (N.D. Cal. Mar. 4, 2011) (denying, inter alia, SMG's motion to clarify the December 17, 2010, disqualification order) [hereinafter *Clarification Order*]. Nintendo opposes. SMG replies. Because Nintendo clearly and indisputably waived the conflict-of-interest, we grant mandamus and direct the court to vacate its disqualification orders.

### BACKGROUND

This petition arises out of SMG's patent infringement suit against Nintendo, Apple, Inc., Samsung Electronics Co., and Sony Corporation of America. SMG's claims against Nintendo—the only party that sought disqualification here—involve the "Hollywood chip," a complex memory chip composed of multiple components.

The Hollywood chip was previously the subject of a suit for patent infringement, which was brought by Lonestar Inventions, L.P. Advanced Micro Devices ("AMD") and Nintendo were defendants in that suit, and they decided to exchange information concerning litigation tactics and settlement strategies, drafts of briefs, and other confidential information under a Joint Defense

Agreement.  Paragraph 6 of the Agreement provided as follows:

> Nothing contained in this Agreement has the effect of transforming outside or inside counsel for either party into counsel for the other party, or of creating any fiduciary or other express or implied duties between a party or its respective counsel and the other party or its respective counsel, other than the obligation to comply with the express terms of this Agreement, or of interfering with each lawyer's obligation to ethically and properly represent his or her own client.  The parties expressly acknowledge and agree that nothing in this Agreement, nor compliance with the terms of this Agreement by either party, shall be used as a basis to seek to disqualify the respective counsel of such party in any future litigation.

P.A. 17.

Kent Cooper—the attorney at the center of this dispute—was working as the Director of Patents and Licensing for AMD at the time of the Lonestar litigation.  He helped assess the infringement claim and the validity of the patent at issue in that case.  After the Lonestar litigation, Cooper left AMD to join the law firm of Floyd & Buss as a partner.  Admittedly, the firm did not screen Cooper upon his entry.

Soon thereafter, Floyd & Buss filed this suit on behalf of SMG against Nintendo and the other defendants.  Nearly ten months after the suit was filed, Nintendo moved to disqualify Floyd & Buss from continued representation in this case.  Although the parties agreed that Cooper never represented Nintendo at any time, there was a dispute whether Cooper received confidential information from Nintendo during the Lonestar litigation.

The district court granted the motion and disqualified the entire firm from continued representation.

In the district court's view, the Joint Defense Agreement's provision waiving any basis to seek disqualification of the "respective counsel of such party in any future litigation," did not pertain to an attorney like Cooper who subsequently left AMD or Nintendo or its counsel and joined another company or firm. *Disqualification Order* at 6. Instead, the court held that the Agreement's waiver provision only contemplated conflicts between AMD and Nintendo as "either party." *Id.* The court stated that "[t]here is no evidence to suggest that the waiver contemplated covering attorneys who left their respective companies for new clients." *Id.* Therefore, in the view of the district court, "the *Lonestar* JDA does not foreclose Nintendo's motion to disqualify Cooper for breach of confidentiality." *Id.* Finding that the case at bar and the Lonestar litigation involved similar technology and similar legal issues pertaining to whether the Hollywood chip infringed the asserted claims, the district court applied a conclusive presumption that Cooper had accessed Nintendo's confidential information and held that disqualification of the entire Floyd & Buss firm was therefore necessary. *Id.* at 7–9.

In a subsequent ruling, the district court clarified that Floyd & Buss was not only disqualified from representing SMG against Nintendo, but disqualified from representing SMG against all of the defendants in the action. *See Clarification Order* at 2.

SMG filed this petition, which seeks a writ of mandamus to vacate these rulings and for the district court to be directed to reinstate Floyd & Buss as counsel for SMG.

## DISCUSSION

The remedy of mandamus is available in extraordinary situations to correct a clear abuse of discretion or usurpation of judicial power. *In re Calmar, Inc.*, 854 F.2d 461, 464 (Fed. Cir. 1988). This court has thus held that a party seeking a writ bears the burden of proving that it has no other means of obtaining the relief desired, *Mallard v. U.S. Dist. Court*, 490 U.S. 296, 309 (1989), and that the right to issuance of the writ is "clear and indisputable," *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 35 (1980).

Citing *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424 (1985), Nintendo contends that mandamus authority cannot be exercised under the circumstances of this case. Nintendo's reliance on *Richardson-Merrell* for this proposition, however, is misplaced. The question at issue there was whether an order disqualifying counsel could be appealed under the collateral-order doctrine, which furnishes "an exception to the final judgment rule for a 'small class' of prejudgment orders." *Id.* at 430.

Far from stating that an order disqualifying counsel may not be remedied through a writ of mandamus, the Court specifically noted that "a rule precluding appeal [under the collateral-order doctrine] would not necessarily leave the client or the disqualified attorney without a remedy" because "a party may seek . . . a writ of mandamus from the court of appeals." *Id.* at 435.

Nintendo also cannot seriously contest that SMG could meaningfully obtain this relief other than by seeking a writ of mandamus. By the time an appeal here could be taken, the trial would be over, and SMG would have gone through the litigation without the counsel of its

choice.[1] Mandamus thus acts as a safety valve to prevent such irreparable harm if appropriate circumstances are presented. *See Mohawk Indus., Inc. v. Carpenter*, 130 S.Ct. 599, 608 (2009).

We therefore turn to the merits. A request for mandamus relief is determined under Federal Circuit law, except to the extent that underlying procedural issues may be governed by the law of the regional circuit, which in this case is the law of the Ninth Circuit. *In re Pioneer Hi-Bred Int'l, Inc.*, 238 F.3d 1370, 1374 (Fed. Cir. 2001). Motions to disqualify under the law of that circuit in turn are decided under state law, in this case California law, where this case is pending. *See In re Cnty. of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000).

SMG argues that the district court erred by granting Nintendo's motion for disqualification. SMG contends that the motion was precluded by the waiver-of-conflict provision in the Lonestar Joint Defense Agreement. According to SMG, the Agreement clearly intended to bar Nintendo from seeking to disqualify "respective counsel" like Cooper who subsequently left one of the parties or its counsel to join another company or law firm. That waiver provision, set forth in Paragraph 6 of the Joint Defense Agreement, provides:

---

[1] The Supreme Court has described the circumstances in which an order disqualifying counsel could be reviewed on direct appeal, stating that, "should the Court of Appeals conclude after the trial has ended that permitting continuing representation was prejudicial error, it would retain its usual authority to vacate the judgment appealed from and order a new trial." *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 378 (1981). In other words, it appears as though a showing of prejudice would be required. Practically speaking, it would be very difficult to demonstrate prejudice absent some sort of misconduct on the part of counsel.

> The parties expressly acknowledge and agree that nothing in this Agreement, nor compliance with the terms of this Agreement by either party, shall be used as a basis to seek to disqualify the respective counsel of such party in any future litigation.

P.A. 17.

We agree with SMG's interpretation. As an initial matter, while challenging SMG's reading of the Joint Defense Agreement, Nintendo cannot dispute that these types of waiver provisions are enforceable where, as here, there is a non-attorney-client relationship (Cooper did not represent Nintendo in the Lonestar litigation) involving sophisticated parties. *See generally* Model Rules of Prof'l Conduct 1.7 cmt. 22 (noting "if the client is an experienced user of the legal services involved and is reasonably informed regarding the risk that a conflict may arise, such consent is more likely to be effective").

Even in attorney-client situations, general rules of professional legal conduct recognize that in certain circumstances it is not only proper but beneficial for parties to contractually consent to a waiver of future conflicts of interest. *See* Restatement (Third) of the Law Governing Lawyers, § 122 cmt. D (2000) ("[T]he gains to both lawyer and client from a system of advance consent to defined future conflicts might be substantial."); *see generally* Model Rules of Prof'l Conduct 1.7 cmt. 22 (recognizing the appropriateness of contracting advanced waivers of conflicts of interest). Moreover, courts applying California law, which governs motions to disqualify counsel, *In re Cnty. of Los Angeles*, 223 F.3d at 995, have generally recognized the enforceability of advanced waiver of potential future conflicts, even if the waiver does not specifi-

cally state the exact nature of the future conflict, *see Visa U.S.A., Inc. v. First Data Corp.*, 241 F.Supp.2d 1100, 1105 (N.D. Cal. 2003).

Though California law governs motions to disqualify counsel, Paragraph 13 of the Joint Defense Agreement provides that the agreement is to be "governed by and construed in accordance with the laws of the State of Washington." Our task is to give effect to the plain language of the parties' agreement. In doing so, we look to the document as a whole, being careful to avoid an interpretation that would render any part of the Agreement superfluous. *See Wagner v. Wagner*, 95 Wash. 2d 94, 101 (1980); *see also* Restatement (Second) of Contracts § 203(a) & cmt. b (1981) ("Since an agreement is interpreted as a whole, it is assumed in the first instance that no part of it is superfluous.").

In view of these principles, the Agreement's terms clearly point away from the district court's conclusion that Cooper was not covered by the waiver provision. Nintendo agreed not to seek disqualification of then "respective counsel of such party [i.e., AMD] in any future litigation." Cooper was indisputably a "respective counsel" of AMD, and, contrary to Nintendo's objections, the breadth and temporal scope of the waiver are broad enough to include "any future litigation" between Nintendo and a party employing, or represented by, Cooper.

This interpretation is bolstered by the fact that "respective counsel" was a term used consistently throughout Paragraph 6 of the Joint Defense Agreement. Just before the waiver provision, the paragraph provides: "Nothing contained in this Agreement has the effect of . . . creating any . . . duties between a party or its *respective counsel* and the other party or its *respective counsel*, other than

the obligation to comply with the express terms of this Agreement[.]" (emphasis added).

To limit the definition of "respective counsel" in this provision to current counsel of AMD and Nintendo (namely, counsel for AMD and Nintendo in 2010 and 2011, or at the time of the SMG litigation), however, would produce an illogical result: former counsel such as Cooper would have no ongoing obligation of confidentiality. In addition, such a reading of the Joint Defense Agreement would violate the fundamental principle that a contract should be interpreted so as to give meaning to each of its provisions. *See Brinderson-Newberg Joint Venture v. Pac. Erectors, Inc.*, 971 F.2d 272, 278-79 (9th Cir. 1992); *Wagner*, 95 Wash. 2d at 101; *see also* Restatement (Second) of Contracts § 203(a) & cmt. b ("Since an agreement is interpreted as a whole, it is assumed in the first instance that no part of it is superfluous."). The parties clearly expressed their intention for Cooper and other "respective counsel" to comply with the terms of confidentiality. Pursuant to the district court's interpretation, however, limiting "respective counsel" to current counsel for AMD or Nintendo would mean that the Joint Defense Agreement imposes no ongoing obligation of confidentiality with respect to former counsel. Such a reading of the agreement is plainly illogical and contrary to the intent of the parties. This would contradict the very reason why any joint defense agreement is in effect in the first place.

Because the only construction that honors the parties' intent to protect their confidential information while keeping the paragraph internally consistent is to include Cooper as a "respective counsel," we agree with SMG that the district court's determination was incorrect as a

matter of law.[2]  Furthermore, we believe that SMG will be adversely affected if it is required to wait until after a final adverse judgment to have this issue addressed because it will have been required to proceed through the litigation without counsel of its choice.  We therefore hold that SMG has demonstrated that its right to issuance of the writ is "clear and indisputable," and that the writ of mandamus should be granted.  Although SMG raises other assertions of error, because we agree Nintendo waived this potential conflict, we do not address these issues.

Accordingly,

IT IS ORDERED THAT:

The petition is granted.  The district court is directed to vacate its order disqualifying Cooper and the Floyd & Buss law firm from further representation in this case.

FOR THE COURT


September 22, 2011                  /s/ Jan Horbaly
Date                               Jan Horbaly Clerk

---

[2]  In holding that waiver provision applicable to counsel who have left the employment of one of the parties to the agreement, we in no way suggest that counsel subject to the agreement could not be disqualified for failure to comply with the agreement itself.

# United States Court of Appeals for the Federal Circuit

---

**IN RE SHARED MEMORY GRAPHICS LLC,**
*Petitioner.*

---

Miscellaneous Docket No. 978

---

On Petition for Writ of Mandamus to the United States District Court for the Northern District of California in case no. 10-CV-2475, Judge Maxine M. Chesney.

---

**ON PETITION**

---

NEWMAN, *Circuit Judge*, dissenting.

## O R D E R

It is not disputed that as Director of Patents and Licensing and in-house counsel to AMD, Kent Cooper was a member of AMD's litigation team when Nintendo and AMD entered into an agreement to exchange vital confidential information, and pursue a common defense against the Lonestar Corporation in a patent infringement suit involving the same accused graphics processing chip at issue here.

Nor is it disputed that after Cooper joined the law firm of Floyd and Buss, the firm was and is representing parties adverse to Nintendo. The firm did not take any

steps to exclude Cooper from the firm's activities in this lawsuit; there is no representation that the traditional "firewall" was erected. While Cooper states that he does not remember receiving Nintendo's confidential information, even his co-counsel at AMD states that Cooper was privy to litigation tactics and strategies that are likely relevant in this substantially-related case. Whether or not Cooper drew upon his insider's information in past interaction with Nintendo, it cannot be presumed that this did not occur. *See generally In re Am. Airlines*, 972 F.2d 605, 614, n.1 (5th Cir. 1992).

The issue is not simply whether Nintendo's information may be used against itself during this litigation; the issue is the integrity of the system of legal representation in today's world of mobile lawyers and large law firms with interacting clients. Thus the system of firewalls has been accepted for many situations. Here, however, it appears that Cooper in his new employment is associated with issues involving his former employer, and that his former employment was at the highest level in interaction with Nintendo's legal and strategic interests. If there is doubt, it must be resolved in favor of the entity whose information is in jeopardy.

The district court applied these routine precepts, and excluded Cooper and his new firm from this litigation, for the possible threat posed to Nintendo is not tolerated under the laws of California or the rules of professional conduct. It is well established that a disqualification is proper when an attorney has received information in his role as an attorney, even if the source of the information is not a "client" of the attorney. *See Oaks Management Corp. v. Superior Court*, 145 Cal.App.4th 453, 464 (2006); *Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft*, 69 Cal.App.4th 223, 232-33 (1999) ("an attorney's receipt of confidential information from a non-client may lead to

the attorney's disqualification"); *see also United States v. Henke*, 222 F.3d 633, 637 (9th Cir. 2000) (a joint defense agreement can create a disqualifying conflict where information gained in confidence by an attorney becomes an issue).

The California courts have accepted the presumption of receipt of confidential information, to protect not only the holder of the information but also the attorney, ensuring that the attorney does not need to "engage in a subtle evaluation of the extent to which he acquired relevant information in the first representation and of the actual use of that knowledge and information in the subsequent representation." *Global Van Lines, Inc. v. Superior Court*, 144 Cal.App.3d 483, 489 (1983). Cooper's disqualifying conflict thus warranted his disqualification and, in the district court's discretion, the disqualification of the law firm that represents the adverse interests. The integrity of the legal process demands no less.

My colleagues on this panel, however, hold that Nintendo waived this conflict, from their reading of the following paragraph in the Agreement:

> Nothing contained in this Agreement has the effect of transforming outside or inside counsel for either party into counsel for the other party, or of creating any fiduciary or other express or implied duties between a party or its respective counsel and the other party or its respective counsel, other than the obligation to comply with the express terms of this Agreement, or of interfering with each lawyer's obligation to ethically and properly represent his or her own client. The parties expressly acknowledge and agree that nothing in this

> Agreement, nor compliance with the terms of this Agreement by either party, shall be used as a basis to seek to disqualify the respective counsel of such party in any future litigation.

While the majority finds this statement to be "clear and indisputable" evidence of a waiver as to Cooper and his new law firm, it is neither clear nor indisputable. According to my colleagues' understanding, Nintendo disclosed confidential information with the knowledge that Cooper might leave AMD and use that information to Nintendo's disadvantage, and waived all right to object to such adverse activity. Such a waiver would be remarkable, and cannot be presumed.

There is no carve-out provision from the conditions of confidentiality that would allow an attorney to represent another party against Nintendo or AMD in a future action. The Agreement's waiver provision, while attempting to avert disputes, does not authorize future adverse representation. The majority extracts text from several different parts of the paragraph, to support its result. However, the standard that SMG must meet is that Nintendo's waiver clearly met this clear-cut conflict situation. That standard has not been met.

The district court, applying California law and practice, found that any waiver did not apply to the situation presented by Cooper and his new association. In addition to its rejection of Nintendo's interpretive arguments, the district court stated that the parties had failed to present any "evidence to suggest that the waiver contemplated covering attorneys who left their respective companies for new clients." *Shared Memory Graphics LLC v. Apple, Inc.*, No. 10-CV-2475, slip op. at 6 (N.D. Cal. Dec. 17, 2010).

The majority of this panel, in considering this court's mandamus authority in local disqualification matters, overlooks the most important: that even in the face of irreparable harm, the district court's reasonable conclusion is within that court's discretion. The Ninth Circuit, whose law we apply here, has made clear "that a district court has the prime responsibility for controlling the conduct of lawyers practicing before it, and that an order disqualifying counsel will not be disturbed if the record reveals 'any sound' basis for the district court's action." *In re Coordinated PreTrial Proceedings in Petroleum Products Antitrust Litigation*, 658 F.2d 1355, 1358 (9th Cir. 1981) (citing *Gas-A-Tron of Arizona v. Union Oil Co. of California*, 534 F.2d 1322, 1325 (9th Cir. 1976)).

Our task is to ensure that the district court's decision was not a "clear abuse of discretion or 'usurpation of judicial power.'" *Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 382 (1953) (citation omitted). That standard cannot be met where, as here, there is plausible support for the district court's ruling. *See In re Cordis Corp.*, 769 F.2d 733, 737 (Fed. Cir. 1985) (noting that "if a rational and substantial legal argument can be made in support of the rule in question, the case is not appropriate for mandamus.").

Despite my colleagues' unwillingness to recognize that disqualification is proper based on breach of the lawyer's professional obligations, in a footnote this court apparently acknowledges that Cooper and his law firm could be disqualified if they are found to breach the Agreement. However, professional responsibility in the legal system does not distinguish between a written agreement to protect information received as an attorney, and the ethical obligation to protect information received as an attorney. The possible adverse use of such information, flowing from a change in the lawyer's employment, is

prohibited under any theory.  The district court so recognized.

The district court's decision to disqualify Cooper and his law firm was not an abuse of the trial judge's discretion.  This court has inappropriately intruded into the district court's authority and responsibility, to the detriment of the integrity of legal practice.  I respectfully dissent.