**Alexis M. HERMAN, Secretary of Labor, United States Department of Labor, Plaintiff,**

v.

**MARINE MIDLAND BANK, Defendant.**

**No. 99–CV–605C(F).**

United States District Court, W.D. New York.

April 25, 2002.

Elaine L. Chao, Secretary of Labor, United States Department of Labor (Christine Collins, Esq., and Marjorie A. Butler, Esq., of Counsel), Boston, Massachusetts, for Plaintiff.

McDermott, Will & Emery (Alan S. Rutkoff, Esq., and Catherine McCain, Esq., of Counsel), Chicago, Illinois, Phillips, Lytle, Hitchcock, Blaine & Huber LLP (Michael B. Powers, Esq., of Counsel), Buffalo, New York, for Defendant.

---

CURTIN, District Judge.

Plaintiff commenced this action in August 1999 pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, against defendant HSBC Bank USA (formerly Marine Midland Bank), as trustee of the Lawless Holding Company Employee Stock Ownership Plan (the "ESOP" or "Plan"), seeking to recover the difference between the price paid and the fair market value for shares of ESOP stock redeemed in connection with the January 1994 merger of the Lawless Holding Company and the Chesapeake Packaging Company. Defendant has moved to compel plaintiff to produce certain documents to be used for all purposes in the litigation (Item 20), and plaintiff has moved for a protective order with respect to defendant's notice to take the deposition of Mr. Eugene Sommer (Item 25). The court heard oral argument on April 9, 2002. For the following reasons, defendant's motion to compel is granted, and plaintiff's motion for a protective order is denied.

## BACKGROUND

As set forth in the motion papers, the ESOP was established in 1989 to facilitate a leveraged buyout of the Lawless Container Corporation by a group of investors formed under the title of the Lawless Holding Company. In January 1991, the United States Department of Labor ("DOL") Pension and Welfare Benefits Administration ("PWBA") initiated an investigation relating to the establishment of the ESOP. In January 1994, while that investigation was still ongoing, the Lawless Holding Company merged with the Chesapeake Packaging Company. The merger transaction involved redemption of ESOP stock, payoff of the debt incurred in establishing the ESOP, and termination of the Plan.

No action was taken by the DOL with respect to the 1989 leveraged buyout or the establishment of the ESOP. Instead, in January 1995, the PWBA began a separate investigation of the 1994 merger transaction. In January 1996, James M. Benages, Director of the DOL's Boston, Massachusetts, Regional Office, wrote a lengthy (41–page) memorandum to PWBA Regional Solicitor Frank McDermott transmitting the PWBA's Report of Investigation ("ROI") regarding the Lawless/Chesapeake merger (referred to herein as the "Benages Memorandum") (Item 21, Ex. A). Contained in the Benages Memorandum are several references to an "analysis" of the 1994 merger performed by Advest Inc., a "valuation expert" retained by the PWBA in connection with the 1989 investigation (*see, e.g., id.* at 13–15). Mr. Benages concluded that the expert's analysis of the merger was flawed because it was based on preliminary information obtained from proxy materials, causing a miscalculation of the value of the ESOP stock redemption sale. Benages recommended retaining a new expert to analyze the merger utilizing the full available information.

Consequently, the PWBA hired Gordon Associates Inc., a business valuation and financial consulting firm located in Boston, to perform an independent analysis of the merger in order to determine whether adequate consideration was received for the ESOP stock redemption. Plaintiff subsequently designated Howard J. Gordon, CFA, as its testifying expert witness in this case, pursuant to Fed.R.Civ.P. 26(a)(2). In that capacity, Mr. Gordon submitted a "Report of Howard J. Gordon, CFA and Eugene A. Sommer, ASA," dated August, 2001, listing the Benages Memorandum as one of the documents reviewed and relied upon for background information (Item 21, Ex. B).

In response to defendant's discovery request for production of all documents listed in the expert report, plaintiff produced a redacted version of the Benages Memorandum eliminating more than half of the document's content (*see* Item 21, Ex. D). According to plaintiff, the redacted material contained "core opinion work-product and attorney-client communications . . ., and represented predecisional deliberations of the governmental agency . . . ." (Item 26, p. 6).

Prior to Mr. Gordon's November 2001 deposition, defendant requested production of the complete, unredacted version of the Benages Memorandum which Gordon had reviewed in preparing his expert report. Plaintiff initially refused to produce the unredacted document, asserting "opinion work

product" protection (*see* Item 21, Ex. C), but eventually agreed to produce the entire document "upon [defense counsel's] agreement that to the extent these documents are otherwise protected by the deliberative process and attorney work product privileges, they will be used only for the limited purpose of deposing our expert Howard Gordon ..." (*id.*, Ex. E). Then, after Mr. Gordon's deposition took place, defendant requested production of "the underlying expert report described in the [Benages] memorandum, specifically the 'Advest Inc's (First Expert)' report/memorandum" (Item 20, Ex. B).

On January 25, 2002, in advance of the January 28, 2002 discovery cutoff (*see* Item 19),[1] defendant moved pursuant to Fed. R.Civ.P. 37 for an order compelling plaintiff to produce the unredacted Benages Memorandum and the Advest report, and directing that these documents may be used for all purposes in this litigation. Defendant claims that plaintiff's disclosure to its testifying expert of the unredacted Benages Memorandum, replete with references to the first expert valuation analysis performed by Advest, operates as a waiver of any privilege or protection now sought with respect to those documents.

Plaintiff responds that the production of the Benages Memorandum to Gordon did not constitute a waiver of the protection accorded to "core" attorney work product. Plaintiff also contends that there is no "Advest Report." Finally, plaintiff seeks a protective order with respect to defendant's notice to depose Eugene Sommer, Mr. Gordon's associate who provided assistance in the preparation of Gordon's expert report.

### DISCUSSION

### I. Defendant's Motion to Compel

#### A. The Benages Memorandum

Defendant has not forcefully argued that the Benages Memorandum is *not* protected from disclosure by the work product doctrine, the attorney-client privilege, or the so-called "deliberative privilege." Instead, de-

fendant primarily argues that, pursuant to Fed.R.Civ.P. 26(a)(2), any such protection is waived for materials provided to a party's testifying expert.

Rule 26(a)(2) provides, in relevant part:

Except as otherwise stipulated or directed by the court, [a party's expert] disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor[, and] the data or other information considered by the witness in forming the opinions ....

Fed.R.Civ.P. 26(a)(2)(B). This rule was amended in 1993 to address the "widely divergent views as to the discoverability of work product information that had been shared between counsel and a testifying expert." *Karn v. Ingersoll–Rand*, 168 F.R.D. 633, 635–36 (N.D.Ind.1996), *quoted in Construction Industry Services Corp. v. Hanover Insurance Co.*, 206 F.R.D. 43, 50 (E.D.N.Y. 2002).

The Advisory Committee Note accompanying the 1993 Amendments states that, in light of the obligations imposed by the revised expert disclosure rules, "litigants should no longer be able to argue that materials furnished to their experts to be used in forming their opinions-whether or not ultimately relied on by the expert-are privileged or otherwise protected from disclosure when such persons are testifying or being deposed." Fed.R.Civ.P. 26 Advisory Committee's Note to 1993 Amendment. As held by the Court of Appeals for the Federal Circuit, the only circuit court to address this issue, the 1993 amendments "make clear that documents and information disclosed to a testifying expert in connection with his testimony are discoverable by the opposing party, whether or not the expert relies on the documents and information in preparing his report." *In re Pioneer Hi–Bred Int'l, Inc.*, 238 F.3d

---

1. The original discovery deadline was July 7, 2000 (Item 7). The deadline has been extended several times, and is now set for May 10, 2002 (Item 22).

1370, 1375 (Fed.Cir.2001). This is true regardless of whether the material consists of "ordinary" work product—*i.e.,* material "prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative," or "core" work product—*i.e.,* "the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." Fed.R.Civ.P. 26(b)(3); *In re Pioneer Hi–Bred,* 238 F.3d at 1375–76. As stated by the Federal Circuit:

> The revised rule proceeds on the assumption that fundamental fairness requires disclosure of all information supplied to a testifying expert in connection with his testimony. Indeed, we are quite unable to perceive what interests would be served by permitting counsel to provide core work product to a testifying expert and then to deny discovery of such material to the opposing party.
>
> Thus, because any disclosure to a testifying expert in connection with his testimony assumes that privileged or protected material will be made public, there is a waiver to the same extent as with any other disclosure.

*Id.* (citation omitted).

Although contrary authority exists, and although the Second Circuit has yet to rule on the issue, the overwhelming majority of district courts in this Circuit as well as in other jurisdictions have concurred with the Federal Circuit's ruling that the ˙expert disclosure requirement of Rule 26(a)(2)(B) trumps the substantial protection otherwise accorded opinion work product under Rule 26(b)(3). *See, e.g., Aniero Concrete Company, Inc. v. New York City School Construction Authority,* 2002 WL 257685, at *2 (S.D.N.Y. February 22, 2002) (citing cases within the Second Circuit); *see also Weil v. Long Island Savings Bank FSB,* 206 F.R.D. 38, 39–40 (E.D.N.Y.2001) (citing cases from other jurisdictions); *contra Nexxus Products Co. v. CVS New York, Inc.,* 188 F.R.D. 7 (D.Mass. 1999); *Magee v. Paul Revere Life Ins. Co.,* 172 F.R.D. 627 (E.D.N.Y.1997); *Haworth, Inc. v. Herman Miller, Inc.,* 162 F.R.D. 289 (W.D.Mich.1995). In this district, United States Magistrate Judge Leslie G. Foschio

followed suit in *W.R. Grace & Co. v. Zotos Int'l, Inc.,* 2000 WL 1843258 (W.D.N.Y. November 2, 2000), holding that the 1993 revisions to Rule 26 requiring disclosure of all information considered by the expert in forming his or her opinion "does not exempt so-called 'core' work-product ...." *Id.,* 2000 WL 1843258, at *4. Judge Foschio carefully examined the language in the 1993 revisions and the Advisory Committee Note, in light of the available case law—including the *contra* authority cited by plaintiff here and found it "illogical that such broad language, explicitly directed to privileges and other sources of protection against disclosure, was intended to exclude any form of attorney work product." *Id.* Judge Foschio also considered, and rejected, the suggestion put forward by plaintiff here that the availability of cross-examination of the expert at trial is an adequate substitute for pretrial disclosure of the work product received by the expert from an attorney. As stated in *W.R. Grace:*

> Such discovery enables counsel, both through deposition of an expert and later cross-examination at trial, to expose risks of non-objectivity resulting from receiving attorney comments by an expert in the course of formulating his opinion. Preventing access to such information, even if constituting "core" work-product, therefore impedes informed consideration of the case and proper evaluation of any expert's report included in summary judgment motions, for purposes of settlement and, ultimately, at trial.

*Id.,* 2000 WL 1843258, at *5.

█ I agree with Judge Foschio's reasoning, and with the reasoning of those cases finding that Rule 26(a)(2)(B) requires a party to disclose core work product, or other privileged or protected material, supplied by the party to its testifying expert. Based on the materials submitted by the parties, it is clear that plaintiff provided Mr. Gordon with a copy of the Benages Memorandum in connection with the preparation of Gordon's expert report and testimony. Accordingly, defendant is entitled to use that document, in its unredacted form, for all purposes in this case.

## B. The Advest Report

As mentioned above, the Benages Memorandum contains several references to an analysis of the 1994 Lawless/Chesapeake merger performed by the PWBA's first valuation expert, Advest Inc. Specifically, Benages states as follows:

> The expert retained by [the Regional Solicitor's office] for the first case analyzed the original equity allocation, with partial information available regarding the 1994 merger. . . .

> The expert further analyzed the allocation by pointing out that the ESOP paid $2.75 million (or 40% of the cash paid), and obtained about 40% of the company, while investors paid $4.2 million in cash, and obtained 60% of the company.

> . . . .

> Next, the expert determined that the features of the preferred stock gave the ESOP a uniquely lower risk investment. Lastly, the expert examined the 1994 merger as a sanity check. Unfortunately, the preliminary information obtained in the proxy materials was misunderstood by the expert. . . .

> . . . Therefore, the expert's assessment of the 1994 merger were [sic] completely off the mark. . . .

> . . . .

> We strongly disagree with the first expert's analysis of both the 1989 leveraged buyout and her preliminary analysis of the 1994 merger . . . .

(Item 21, Ex. A, pp. 13–15). The Benages Memorandum also refers repeatedly to a December 1994 memorandum from Margaret Raymond, formerly with the Regional Solicitor's Office, which apparently provided the basis for Benages' description of the analysis performed by Advest (see id. at pp. 8–9, 13).

When defendant requested production of the Advest report pertaining to the analysis discussed in the Benages Memorandum, plaintiff responded that no such document existed. It is noteworthy that plaintiff has not submitted a declaration or affidavit from Benages, Raymond, or Advest. Nor has plaintiff provided the court with any indication that these or any other representatives of DOL involved in the investigation of the 1994 merger have been contacted in connection with defendant's document requests in this case. In any event, it is clear from a reading of the language from the Benages Memorandum cited above that some documentation of the Advest analysis must have existed at the time Ms. Raymond prepared her December 1994 memorandum. Yet, neither the Raymond memorandum nor any document discussing Advest's analysis has been produced to defendant.

Accordingly, I cannot accept plaintiff's reasons for refusing to produce documentation pertaining to the Advest analysis. Defendant's motion to compel is granted to the extent it seeks production of any such documentation in plaintiff's possession or control, and to the extent it seeks production of the December 1994 Raymond memorandum.

## II. Plaintiff's Motion for a Protective Order

Plaintiff seeks a protective order with respect to defendant's notice to take the deposition of Eugene Sommer, Mr. Gordon's associate, who co-authored the expert report submitted by plaintiff pursuant to Rule 26(a)(2)(B). Specifically, plaintiff relies on Rule 26(b)(4)(B), which provides:

> A party may, through interrogatories or by deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only as provided in Rule 35(b) or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.

Fed.R.Civ.P. 26(b)(4)(B).

Defendant contends that it is entitled to take Mr. Sommer's deposition because Sommer provided substantial assistance to Mr. Gordon in preparing the expert report. Indeed, as evidenced by the invoices and purchase orders attached to defendant's motion papers, DOL paid Gordon Associates a total of $61,305.00 for services rendered between

September 1996 and September 2001 (*see* Item 27, Ex. B). Of that total, $32,120.00 was charged to Mr. Sommer based on 173 hours of work, and $29,185.00 was charged to Mr. Gordon based on 156.25 hours of work. According to these figures, Mr. Sommer spent 16.75 more hours on the expert report than Mr. Gordon did, and DOL spent $2,935.00 more for Mr. Sommer's services than for Mr. Gordon's.

Defendant cites *Derrickson v. Circuit City Stores, Inc.,* 1999 WL 1456538, 1999 U.S. Dist. Lexis 21100 (D.Md. March 19, 1999), in which a similar issue arose. The plaintiffs in *Derrickson* sued Circuit City for employment discrimination, and hired an expert to testify with respect to Circuit City's compensation and promotion policies. The expert submitted a report as required under Rule 26(a)(2), and defendant moved to exclude the expert for failure to disclose information pertaining to an analysis performed by the expert's assistant. The district court denied the motion to exclude, but directed the plaintiffs to disclose the underlying data, instructions, and other information regarding the assistant's analysis. The court rejected the plaintiffs' assertion that the assistant was a "non-testifying expert" within the strictures of Rule 26(b)(4)(B), since the expert and the assistant "worked hand-in-glove, and the fruits of their labor are indivisible." *Id.,* 1999 U.S. Dist. Lexis 21100, at *18. As stated by the court:

> Defendant cannot properly cross-examine [the expert] without first understanding how his assistant manipulated the data. This is not a case where the testifying expert relied on a single, discrete written report by a non-testifying expert. If that were so, Plaintiffs would simply need to produce the non-testifying expert's report. To the contrary, [the expert]'s opinions in this matter are the result of a seamless collaboration with his assistant. Under these circumstances, Defendant is entitled to know what [the expert]'s assistant did.

*Id.* The court noted further that, had the issue been presented, it would have been inclined to rule that the assistant could be deposed and cross-examined at trial. *Id.* at *18 n. 1. The court also held that, even if it were to consider the assistant a non-testifying expert, the result would be the same because the information sought by the defendant—*i.e.,* how the underlying data was analyzed—was "exclusively within the assistant's cognizance" and discoverable under Rule 26(b)(4)(B). *Id.* at *19; *see also Dura Automotive Systems of Indiana, Inc. v. CTS Corp.,* 285 F.3d 609, 612–14 (7th Cir.2002) (while persons providing assistance in formulating expert opinion normally need not testify, opposing party can depose them to make sure they performed their tasks competently).

■ The pertinent facts of *Derrickson* are much closer to the mark than any of the cases cited by plaintiff in support of the motion for a protective order. *See, e.g., Hoover v. United States Dep't of Interior,* 611 F.2d 1132, 1142 (5th Cir.1980) (owner of land subject to condemnation proceeding not entitled to production of government's expert appraiser's report); *In re Shell Oil Refinery,* 132 F.R.D. 437, 442 (E.D.La.1990) (plaintiff not entitled to depose defendant's non-testifying in-house experts); *United States v. Hooker Chemicals & Plastics Corp.,* 112 F.R.D. 333, 338 (W.D.N.Y.1986) (government not entitled to discovery of non-testifying consulting expert absent showing of exceptional circumstances). In this case, the evidence clearly demonstrates that the expert report submitted by Mr. Gordon was the result of substantial collaborative work by he and Mr. Sommer. Mr. Sommer performed more than half of the total 329.25 hours it took to generate the expert report, and accounted for more than half of the $61,305.00 fee. Under these circumstances, the fruits of Gordon Associates' labor is indivisible, and defendant is entitled to explore what Mr. Sommer did.

Finally, plaintiff has not advanced any convincing reason, beyond reliance on the "exceptional circumstances" language in Rule 26(b)(4)(B), why Mr. Sommer should not be required to submit to a deposition in this case. Considering the extensive work performed by Mr. Sommer in connection with the expert report (to which plaintiff ascribes dispositive reliance), and based on the authority provided by the *Dura Automotive*

*Systems* and *Derrickson* cases, I find that the deposition of the testifying expert's assistant would be appropriate under the circumstances.

Accordingly, plaintiff's motion for a protective order is denied.

## CONCLUSION

For the foregoing reasons, defendant's motion to compel (Item 20) is granted in full. The unredacted version of the Benages Memorandum (Item 21, Ex. A) may be used for all purposes during the course of this litigation. Plaintiff shall also produce forthwith all available documentation pertaining to the Advest analysis, including the December 1994 memorandum of Margaret Raymond.

Plaintiff's motion (Item 25) for a protective order with respect to defendant's notice to take the deposition of Eugene Sommer is denied.

Finally, as discussed during oral argument, the discovery deadline is extended from May 10, 2002 until September 13, 2002, in order to accommodate the remaining discovery encompassed by this order. The court will meet with counsel at 3:30 p.m. on that date. Out-of-town counsel shall participate by telephone.

So ordered.