ESTATE OF Douglas L. MANSHIP, et al

v.

UNITED STATES of America.

Civil Action No. 04–C–91–M2.

United States District Court,
M.D. Louisiana.

Dec. 18, 2006.

Leon Gary, Jr., Brandon Kelly Black, Charles A. Landry, Davis Bradford Allgood, Ryan Estes Johnson, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Baton Rouge, LA, Edward Dirk Wegmann, Miriam Wogan Henry, Jones, Walker, New Orleans, LA, for Estate of Douglas L. Manship, et al.

John Joseph Gaupp, United States Attorney's Office, Middle District of Louisiana, Baton Rouge, LA, Frank M. Dale, Jr., Henry J. Riordan, John M. Bilheimer, U.S. Department of Justice–Tax Division, Washington, DC, for United States of America.

## RULING AND ORDER

NOLAND, United States Magistrate Judge.

This matter is before the Court on the Motion for a Protective Order Regarding Deposition Subpoenas Issued to Its Non–Testifying Experts (R. Doc. 196) filed by defendant, United States of America ("United States"). Plaintiffs, Estate of Douglas L. Manship, deceased ("the Estate"); David C. Manship; Richard F. Manship; Douglas L. Manship, Jr.; and Dina Manship Planche (collectively "plaintiffs"), have filed an opposition to this motion (R. Doc. 206), to which the United States has filed a reply. (R. Doc. 209).

**1.** Nammacher is the Managing Director and Principal of Empire Valuation Consultants, Inc. ("Empire Valuation"). *See,* Designation of Testifying Experts by the United States (R. Doc. 36), Nammacher Resume, p. 35.

**2.** In the way of procedural background, the Court notes that, on January 28, 2005, it granted an extension of the previously scheduled deadline for disclosure of the identities and resumes of the parties' principal experts (R. Doc. 30). In compliance with that Order, on February 15, 2005, the United States identified the following principal experts who may be used at trial: Gregg Jarrell ("Jarrell"), W. Lawrence Patrick ("Patrick"), and Nammacher. (R. Doc. 36). On July 13, 2006, the parties were required to exchange written reports of their principal experts, and at that time, the United States produced only one report, that of Jarrell.

The parties were also required to disclose the identities and resumes of rebuttal experts by July 31, 2006. (R. Doc. 151). On that date, the United States identified the following rebuttal

## FACTS & PROCEDURAL BACKGROUND

The factual background of this matter has been discussed in detail in prior rulings of the Court. Through this suit, plaintiffs seek a refund of the approximately $26 million in additional estate taxes that were paid to the United States based upon a valuation of the Estate's interest in three companies, Capital City Press, Inc., Louisiana Television Broadcasting Corporation, and Mobile Video Tapes, Inc. (collectively "the Manship Companies"). Thus, the basic issue in this case is the valuation for estate tax purposes of the three Manship Companies. Specifically at issue in the present motion are the deposition subpoenas of two expert witnesses who were previously identified by the United States as witnesses who may testify at trial but later re-designated as non-testifying witnesses, Scott Nammacher ("Nammacher")[1] and Clint Bolte ("Bolte"). Plaintiffs issued subpoenas to both of those witnesses, commanding them to appear for depositions in late October 2006.[2]

In response to the subpoenas, the United States filed the present motion for protective order, seeking to have the Court rule that the depositions should not be taken because Nammacher and Bolte are not fact witnesses or experts whose opinions may be presented

experts who may be used at trial: Jarrell, Patrick, Nammacher, and Bolte. (R. Doc. 152). Subsequently, on August 9th and August 15th, 2006, the United States filed amended designations of its principal and rebuttal experts (R. Docs. 154 & 156), wherein it designated Jarrell as its only principal expert witness, designated both Jarrell and Patrick as rebuttal expert witnesses, and re-designated Nammacher and Bolte as experts retained in preparation for trial and who are not expected to be called as witnesses at trial. The parties were required to exchange expert reports of their rebuttal experts by September 19, 2006 (R. Doc. 159), and the United States timely provided rebuttal expert reports prepared by Jarrell and Patrick by that date.

Finally, the deadline for completion of fact discovery in this matter was June 1, 2006. Due to the pendency of discovery motions, including the one presently at issue, the deadline for completion of expert witness depositions was extended beyond November 3, 2006, with the new deadline to be set during a status conference to be held on December 18, 2006. (R. Doc. 201 and 211).

at trial; their opinions are not relevant or discoverable pursuant to Fed.R.Civ.P. 26; their opinions are protected from disclosure by Fed.R.Civ.P. 26(b)(4)(B) and the work product doctrine; the plaintiffs have already retained at least three (3) experts to provide them with opinions on the same subject matter sought through Nammacher and Bolte's depositions, thereby precluding their depositions based upon Fed.R.Civ.P. 26(b)(4)(B); and since the non-testifying experts are consultants and not expert witnesses, the taking of their depositions after the cutoff date for fact discovery and during expert witness discovery is improper.

In opposing this motion, plaintiffs assert two arguments. First, they contend that they are entitled to depose Nammacher in light of the fact that the United States' testifying expert, Jarrell, and his assistant, James Canessa ("Canessa"), purportedly considered information provided by Nammacher and/or his company, Empire Valuation, in the preparation of Jarrell's expert report. Secondly, plaintiffs assert that they are entitled to depose both Nammacher and Bolte because they were originally identified as testifying experts and only, at the "very last minute," re-designated as non-testifying experts, after the Court-imposed deadline(s) for exchanging witness lists.

## LAW & ANALYSIS

### I. Are plaintiffs entitled to depose Nammacher because he "apparently assisted" Jarrell with the preparation of his expert report?

■ As discussed above, plaintiffs first assert that they are entitled to take Nammach-

er's deposition because he "apparently assisted" the United States' testifying expert, Jarrell, in the preparation of his expert report since, pursuant to Fed.R.Civ.P. 26(a)(2)(B), plaintiffs are permitted to discover all of the information Jarrell "considered" in preparing his report.[34]  As evidence that Nammacher "assisted" Jarrell in preparing his report, plaintiffs refer to time entries on the July 2006 invoices of Jarrell and of his assistant from Forensic Economics, Canessa, which indicate that a conference call was held on July 11, 2006, just two (2) days prior to the deadline for principal expert reports, in which Jarrell, Canessa, the U.S. Attorneys, and Nammacher/Empire Valuation participated.  Based upon those time entries, plaintiffs contend that Nammacher/Empire Valuation "likely assisted" in the preparation of Jarrell's expert report.

However, in its reply to plaintiffs' opposition, the United States points out that Nammacher actually did not "assist" Jarrell in the preparation of his report and that Jarrell's report is not the result of any "collaborative work" between Jarrell and Nammacher.  In support of that contention, the United States submitted with its reply memorandum a declaration by Jarrell.  *See*, Government Exhibit 1, attached to its reply.  In that declaration, Jarrell attests to the fact that he has fully disclosed all data and other information that he considered in forming the opinions set forth in his principal and rebuttal expert reports and that neither Nammacher nor Bolte provided him with any factual information related to the assets of the Manship

---

**3.** In support of this argument, plaintiffs refer to the Court's previous ruling in this matter.  In *Estate of Manship v. U.S.*, 236 F.R.D. 291 (M.D.La.2006), the Court noted that, pursuant to Fed.R.Civ.P. 26(a)(2)(B), the report of an expert who may testify at trial shall contain, among other things, the data or other information "considered" by the witness in forming his/her opinions, which includes any documents or materials "generate[d], review[ed], reflect[ed] upon, read, and/or use[d] in connection with the formulation of [an expert's] opinions, even if such information is ultimately rejected."  *Id.* at 295.

**4.** Specifically, Fed.R.Civ.P. 26(a)(2)(A) & (B) provide that a party shall disclose to other parties the identity of any person who may be used at

trial to present expert evidence, and such disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony be accompanied by a written report prepared and signed by the witness.  The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.  Fed.R.Civ.P. 26(a)(2)(A) & (B).

Companies which are the subject of his reports, except as specifically noted in his declaration.[5] Jarrell further attests that he did not rely upon any opinion of Nammacher or Bolte or use them as assistants in preparing his reports. Finally, Jarrell indicates that, after he prepared a draft of his principal expert report, he participated in one or two conference calls on July 11, 2006, for a total of five (5) hours or less with the U.S. Attorneys, Nammacher and others, at which time he discussed the opinions set forth in his draft report with the participants on the call; however, he pointed out that Nammacher was included in the call at the request of the U.S. Attorneys.

In light of the representations made in Jarrell's declaration, it appears that the only information "considered" by Jarrell in preparing his report, which was provided to him by Nammacher and/or Bolte, is the three items of factual data specifically identified in the declaration and which have already been produced to the plaintiffs. Even if Jarrell did not ultimately rely upon that factual data, plaintiffs were nevertheless entitled to review it, and it was therefore properly produced with Jarrell's report(s). However, given Jarrell's representation to the Court that he has produced all of the information and data that he "considered" in forming his opinions and that he did not rely upon the opinions or assistance of Nammacher or Bolte in preparing his report, the Court finds that plaintiffs are not entitled to take those experts' depositions pursuant to Fed.R.Civ.P. 26(a)(2)(B).

Plaintiffs' assertion that Nammacher "assisted" Jarrell, by providing information beyond that specifically identified in Jarrell's declaration, is speculative, and the Court will not permit Nammacher's deposition to be taken based simply upon speculation, where Jarrell has provided a sworn declaration indicating to the contrary. Furthermore, the mere fact that Nammacher participated in July 11, 2006 conference calls with Jarrell, Canessa and the U.S. Attorney's office is not competent evidence that he provided any input or assistance to Jarrell during those calls regarding Jarrell's report. It is possible that Nammacher simply listened to Jarrell's discussions concerning the draft report, at the U.S. Attorney's request, and did not provide any input during the calls. If plaintiffs are in possession or control of evidence to the contrary, such evidence should be produced; however, based solely upon the invoices submitted, the Court cannot definitively conclude that Jarrell "considered" any input by Nammacher during those phone conferences. Accordingly, the depositions of Nammacher and Bolte should not be permitted based upon Fed.R.Civ.P. 26(a)(2)(B).[6]

---

**5.** Jarrell indicates that the only data provided to him or Forensic Economics by Nammacher was: (a) a draft of an eleven-page spreadsheet using the guideline transaction method of valuation regarding Capital City Press, Inc., (b) a twelve-page draft of an article regarding betas, and (c) two-pages of a published article regarding betas. Jarrell notes that those three items were disclosed by him along with his expert and rebuttal reports; however, he did not use them, or rely upon them, in preparing his reports.

**6.** In their supplemental memorandum of law, plaintiffs rely upon *Trigon Ins. Co. v. U.S.*, 204 F.R.D. 277 (E.D.Va.2001), for the proposition that the plaintiffs should be able to take the deposition of Nammacher because Jarrell and his assistant, Canessa, "considered" information provided by Nammacher and/or his company in the preparation of Jarrell's expert report. However, *Trigon* involved a corporate taxpayer's request for "communications" between the government's testifying experts and its non-testifying litigation consultant who allegedly assisted in preparation of the expert reports which were exchanged between the experts and consultant pursuant to Fed.R.Civ.P. 26(a)(2); it did not involve a request for the consultant's deposition under Fed.R.Civ.P. 26(b)(4). Thus, it is not dispositive of the issue herein.

In other words, although the *Trigon* court correctly held that the United States was required to produce the communications between the consultant and the testifying experts, as well as other materials provided to, or created by, the testifying experts, such as draft reports exchanged between the experts and consultant, pursuant to Fed.R.Civ.P. 26(a)(2), the issue of whether or not the deposition of the consultant could be taken was not addressed in that case, and the Court will not extend the *Trigon* court's holding to reach that issue. In the present case, since Jarrell indicates that all documents or materials considered by him in connection with his report, including information provided to him by Nammacher, have already been produced to plaintiffs, Fed.R.Civ.P. 26(a)(2) appears to be satisfied in this case, and *Trigon* therefore has no bearing on this ruling.

## II. Are plaintiffs entitled to depose Nammacher and Bolte because they were only recently re-designated as non-testifying/consulting experts?

Plaintiffs next argue that they are entitled to depose Nammacher and Bolte because they were designated as testifying experts for the majority of this litigation and were only recently re-designated as non-testifying experts at the "eleventh hour" and after the fact discovery deadline expired. Plaintiffs point out that both Nammacher and Bolte attended a tour of the facilities owned and operated by Capital City Press, Inc., and that Nammacher was actually designated as a testifying expert at the time of the tour and was using the tour to assist with the preparation of his expert report. Plaintiffs also note that, upon motion by the United States, Nammacher (and other Government experts) were permitted to participate in the corporate depositions of certain employees of the Manship Companies by asking a limited number of questions. Plaintiffs contend that, considering the extent of participation in discovery by Nammacher and Bolte while they were designed as testifying experts, the United States should not be able to re-designate them at this late date as non-testifying experts and retroactively cloak the information provided by and between the United States and its experts with the work product and/or consultative privilege.

The issue of whether an expert initially designated as a testifying expert witness, but later re-designated as a non-testifying/consulting expert, may be deposed has been confronted by courts on a number of occasions. Although the Fifth Circuit Court of Appeal has not addressed the issue, the Eastern District of Louisiana and courts in other circuits have confronted it and consistently discussed two lines of cases which reached conflicting outcomes with respect to the issue. The starting point for a discussion of those cases involves setting forth the applicable statutory law regarding discovery pertaining to expert witnesses. Fed.R.Civ.P. 26(b)(4)(A) applies to experts who have been designated as witnesses whose opinions may be presented at trial and permits their depositions to be taken; however, it provides that, if a report from the expert is required under Rule 26(a)(2)(B), the deposition shall not be conducted until after the report is provided. Fed.R.Civ.P. 26(b)(4)(A). By contrast, Fed.R.Civ.P. 26(b)(4)(B) applies to experts who have been retained in anticipation of litigation or preparation for trial and who are not expected to be called as witnesses at trial and provides that a party may discover facts known or opinions held by such witnesses, through interrogatories or by deposition, only as provided by Fed.R.Civ.P. 35(b) or upon a showing of "exceptional circumstances" (*i.e.*, the "exceptional circumstances" test). Fed.R.Civ.P. 26(b)(4)(B).[7]

One line of cases, that relied upon by plaintiffs, originated with the case of *House v. Combined Ins. Co. of Amer.*, 168 F.R.D. 236 (N.D.Iowa 1996), which held that Rule 26(b)(4)(B)'s "exceptional circumstances" test does not apply when a testifying expert witness designation has been withdrawn and a witness is redesignated as a non-testifying expert. *House* involved a plaintiff's interest in discovery from and testimony by an expert who had conducted an independent psychological examination of the plaintiff pursuant to Fed.R.Civ.P. 35 and was later withdrawn as an expert. *House,* at 238–39. The court held that, although the plaintiff was no longer "entitled" to discovery pursuant to Fed.R.Civ.P. 26(b)(4)(A), access to the expert should be based upon a discretionary standard of "balancing the probative value against prejudice under Fed.R.Evid. 403" (*i.e.,* "the balancing test"). *Id.,* at ·246. However, in *House,* the court was inquiring about the correct application of Rule 26(b)(4) when a "Rule 35 medical examination ha[d] occurred" and noted the "kind of reliance" created by "submission to a medical examination by the designated expert."[8] By con-

---

7. Fed.R.Civ.P. 35(b) relates to reports of physical and mental examinations in cases involving the mental or physical condition of a party and is inapplicable to this case. Fed.R.Civ.P. 35(b).

8. In *House,* the court identified four interests weighing against allowing an opposing party to depose or call at trial a consultant, non-testifying expert witness, including: (1) the desire to allow counsel to obtain necessary expert advice without fear that the adversary may obtain such

trast, the present case does not involve a Rule 35 medical examination, and the Court therefore finds that *House* is distinguishable. *See also, FMC Corp. v. Vendo Co.,* 196 F.Supp.2d 1023 (E.D.Cal.2002)(where the discretionary "balancing" test used in *House* was rejected because the case did not deal with a Rule 35 personal, medical, or psychological examination, involving expert reports discoverable under Rule 35(b)); *Lehan v. Ambassador Programs, Inc.,* 190 F.R.D. 670 (E.D.Wash.2000)(declining to follow *House;* "exceptional circumstances" test applied to Rule 35 expert withdrawn as witness). Furthermore, in *House,* the defendant never formally withdrew the psychiatrist as an expert and included him in the witness list in the pretrial order, neither of which is the case in the present matter.[9]

Given those distinguishing characteristics in *House* and its progeny, the Court will examine the other line of cases which apply the Fed.R.Civ.P. 26(b)(4)(B) "exceptional cir-

cumstances" test to determine whether that test should be applied herein. Those cases originate from *Ross v. Burlington N.R. Co.,* 136 F.R.D. 638 (N.D.Ill.1991). In *Ross,* the plaintiff designated an expert and revealed the subject matter of his testimony. Later, after the plaintiff withdrew that designation, the defendant sought to depose the expert. The court denied a motion to compel the deposition testimony filed by the defendant, holding that, "[s]ince the plaintiff changed his mind before any expert testimony was given [ ], the witness never actually acted as a testifying expert witness." *Id.*

Subsequent to *Ross,* a similar issue was faced in *Dayton–Phoenix Group v. General Motors Corp.,* 1997 WL 1764760 (S.D.Ohio 1997), where the defendant filed a motion for protective order to prevent the plaintiff from deposing an expert that the defendant had designated and then subsequently withdrawn. The defendant argued that the "ex-

---

information; (2) the unfairness of allowing an opposing party to reap the benefits from another party's efforts and expense; (3) the fear of discouraging experts from serving as consultants if their testimony could be compelled; and (4) the risk of prejudice because of the prior retention of an expert by an opposing party. *Id.* at 241. The court noted that, while a consulted-but-never-designated expert properly falls under the work product doctrine that protects matters prepared in anticipation of litigation, the "practical effect of a Rule 26 designation of a [testifying] expert is to make an expert available for deposition by the opposing party," which enables preservation of the expert's testimony should the expert later become unavailable or may serve for impeachment purposes. *Id.* at 245. As a result, the court determined that the Rule 26 designation of a testifying expert waived the "free consultation" privilege under Rule 26(b)(4)(B), even if the designation was subsequently withdrawn because the designation under Subsection (b)(4)(A) eliminates or removes the "exceptional circumstances" category. *Id.*

In reaching that conclusion, the *House* court relied on the nature and circumstances of the "particular expert testimony" sought, finding that by requiring a medical examination by a designated expert created a reliance or reasonable expectation that such an expert would be available. The court applied the Fed.R.Evid. 403 balancing test and determined that the deposition was appropriate.

9. *See,* other cases rejecting the "exceptional circumstances" test, which are also distinguishable, *Furniture World, Inc. v. D.A.V. Thrift Stores, Inc.,*

168 F.R.D. 61, 62–63 (D.N.M.1996)(where the Court found that a person could not be designated as both a testifying and a consulting expert, and unless the defendant removed its expert from the list of witnesses expected to testify at trial, the defendant's designation of that same expert as a consulting expert would not bar her deposition nor negate her obligation to produce documents requested by the plaintiff. *Furniture World* is distinguishable from the present matter because, in this case, Nammacher and Bolte are not simultaneously designated as both testifying and consulting experts); *Ferguson v. Michael Foods, Inc.,* 189 F.R.D. 408 (D.Minn.1999)(relating to how the court should treat a party's request to use an adverse party's designated expert at trial after the adverse party withdraws that expert's designation); *Tom L. Scott, Inc. v. McIlhany,* 798 S.W.2d 556 (Tex.1990)(holding that the parties could not use a settlement to obtain the redesignation of experts who had originally been designated as testifying experts, but redesignated as consulting experts, to avoid discovery of the experts' identities, opinions and mental impressions. The attorneys for the settling parties in that case informed the trial judge that the settlements were "expressly contingent" on the experts not being required to give their testimony and that the settlement offer would expire upon the depositions being taken. The court found that the purposes and policies underlying the consulting expert privilege did not countenance such conduct and held that the redesignation of experts "under the facts of that case," which are distinguishable from the present case, violated the policy underlying the rules of discovery and was ineffective).

ceptional circumstances" test under Rule 26(b)(4)(B) was applicable, while the plaintiff contended that, since the defendant had previously designated the expert as a testifying expert, Rule 26(b)(4)(A) applied. *Id.*, *1. The court considered the differing results in *House* and *Ross* and relied upon the Advisory Committee Notes to Rule 26(b)(4)(B) in concluding that the "exceptional circumstances" test should be applied. The Advisory Committee Notes limit discovery to trial witnesses and provide that the purpose of Rule 26(b)(4)(A) is to allow a party to prepare adequately for cross-examination at trial and to promote fairness, which would not be accomplished by allowing access to the other party's trial preparation. *Id.*[10]

The only court within the Fifth Circuit to address the issue at bar is the Eastern District of Louisiana, which has confronted the issue on two (2) occasions. In *In re Shell Oil Refinery*, 132 F.R.D. 437 (E.D.La.1990), the Eastern District of Louisiana dealt with a plaintiff's request to depose both designated and non-designated experts. In that case, the plaintiff sought the results of certain tests conducted by the defendant and leave to depose the authors of the preliminary expert reports. The defendant argued that it had not decided which test results and experts it would use at trial and represented that it did not intend to use two in-house experts involved in the testing nor their preliminary reports. All of the preliminary reports, including those of the two in-house experts, however, had been provided to the plaintiff prior to the filing of its motion seeking their testimony. *Id.*, at 441. Regarding the two experts the defendant had consulted, the court held that, even though the plaintiff had received copies of their preliminary reports, their investigation and study was in anticipation of litigation. Because the court determined that those experts were "retained or specially employed" in anticipation of litigation as required by Rule 26(b)(4)(B),

it found that the "exceptional circumstances" standard applied, placing a heavy burden on the moving party to obtain the discovery. *Id.*, at 441–442.

The Eastern District of Louisiana faced a similar issue in 1999 in *Commerce & Industry Insurance Co. v. Grinnell Corp.*, 1999 WL 731410 (E.D.La.1999). In that case, the court addressed the issue of whether a witness who is designated as a testifying expert on the witness list of a dismissed party and who has already submitted an expert report may be deposed under Fed.R.Civ.P. 26(b)(4)(B). The court found that its prior decision in *In re Shell Refinery* was distinguishable because witness lists had not been exchanged in that case at the time the testifying witness was re-designated as a non-testifying/consulting expert. *Id.*, at *2. The court further held that, because the expert in *Commerce* had already submitted his expert report prior to his re-designation as a non-testifying expert, the work product protection provided for in Rule 26(b)(4)(B) had been rendered moot. The *Commerce* court therefore concluded that Rule 26(b)(4)(B) did not preclude the taking of the re-designated non-testifying expert's deposition. *Id.* Accordingly, the only jurisprudence derived from a court within the Fifth Circuit on the issue at bar indicates that, where a testifying expert has been re-designated as a consulting expert after the deadline for exchanging witness lists *and* has submitted an expert report prior to re-designation, his or her deposition should be permitted.

Courts in other circuits, however, have taken a different approach and have held that the "exceptional circumstances" test under Rule 26(b)(4)(B) should be applied even where an expert's reports and/or opinions, or portions thereof, were disclosed prior to his/her re-designation as a non-testifying expert. *FMC Corp. v. Vendo Co.*, 196 F.Supp.2d 1023 (E.D.Cal.2002); *See also, Callaway Golf Co.*

10. *See also, Mantolete v. Bolger,* 96 F.R.D. 179 (D.Ariz.1982)(a pre-*Ross* case holding that the "exceptional circumstances" test applied where the plaintiff moved to compel the deposition of a defense expert, who had been previously designated as an expert for trial and then subsequently withdrawn. The court noted the reason for the test is that, while pretrial exchange of discov-

ery regarding experts to be used as witnesses aids in narrowing the issues, preparation of cross examination, and the elimination of surprise at trial, there is no need for a comparable exchange of information regarding non-witness experts who act as consultants and advisors to counsel regarding the course the litigation should take).

*v. Dunlop Slazenger Group Americas,* 2002 WL 1906628 (D.Del.2002)(noting that there is a "common theme" apparent throughout the cases reviewed from the various jurisdictions—the conversion of an expert designated for trial purposes under Rule 26(b)(4)(A) to a consulting expert under Rule 26(b)(4)(B) is allowed and results in insulating that expert from discovery absent the showing of "exceptional circumstances;" and holding that disclosure of the expert's opinions prior to re-designation does not alter the analysis. The court noted that the only exception to that theme was *House,* which is distinguishable because it involved a plaintiff who had undergone a medical examination by defendant's expert, one of the exceptions under Rule 26(b)(4)(B)); *Mantolete v. Bolger,* 96 F.R.D. 179 (D.Ariz.1982)(similar to *Callaway* in facts and holding).[11]

Finally and most recently, cases out of the Southern District of New York and the Arizona Court of Appeals, *Netjumper Software, LLC v. Google, Inc.,* 2005 WL 3046271 (S.D.N.Y.2005) and *Green v. Nygaard,* 213 Ariz. 460, 143 P.3d 393 (2006), have reiterated that the weight of authority in cases involving re-designation of witnesses from testifying to non-testifying favor application of the Rule 26(b)(4)(B) "exceptional circumstances" test. *Id.,* at *3. In *Netjumper,* the plaintiff informed the defendant that a particular witness had been retained as a testifying expert in accordance with Fed.R.Civ.P. 26(a)(2). Over the next six months, the plaintiff provided the expert with some documents obtained from the defendant, but the expert never produced any written reports or drafts. Subsequently, plaintiff was unable to locate its expert and ultimately terminated his services and retained another testifying expert. Defendant then served a subpoena upon plaintiff's prior testifying witness, to which the plaintiff objected, and the defendant filed a motion to compel the deposition. *Id.,* at *1.

The *Netjumper* court assessed the *House* and *Ross* lines of cases and found the *Ross* cases to be dispositive. Specifically, it con-

cluded that the purpose underlying Rule 26(b)(4)(A), which permits discovery from a testifying expert witness to facilitate cross-examination of that expert at trial, is not implicated where the expert will not testify, has never been deposed, and has never produced a report. *Id.,* at *3. Instead, the court found that the purposes underlying Rule 26(b)(4)(B), to promote fairness by precluding unreasonable access to an opposing party's diligent trial preparation, were "surely implicated," and the deposition of the previously designated testifying witness was not allowed. *Id.*

In *Green,* the court addressed the issue of whether an expert's immunity from discovery may be restored when the redesignation to nonwitness status occurs after the expert has testified at a pretrial motion hearing. The court concurred with its previous decision in *Emergency Care Dynamics v. Superior Court,* 188 Ariz. 32, 36, 932 P.2d 297, 301 (Ct.App.Ariz.1997), where it held that the "mere ... designation" of an expert witness does not create a "permanent waiver of [work product protection] that [can]not be revoked." *Id.,* at 396. The court further noted that "restoring the work product protection of Rule 26(b)(4)(B) appears to be the majority approach in these cases, even when the expert[ ] witness' designation is withdrawn after his or her opinions have been disclosed." *Id.,* at 397, citing *FMC Corp.,* 196 F.Supp.2d 1023 and *Employer's Reinsurance Corp.,* 213 F.R.D. at 426. Concluding that other federal cases on the issue must be considered persuasive because of the need for "uniformity in interpretation" of the federal rules, the *Green* court held that the work product protection was restored to the expert upon redesignation to nonwitness status and that discovery of his file could not be obtained absent a showing of "exceptional circumstances" as required by Rule 26(b)(4)(B). *Id.*

■ Based upon the above jurisprudence, the Court finds that the majority approach of

---

11. *See also, Reeves v. Boyd & Sons, Inc.,* 654 N.E.2d 864 (Ct.App.Ind.1996)(holding that personal injury plaintiff was not entitled to depose defendant's expert medical witness, where the defendant decided not to call that expert as a witness, and where no "exceptional circumstances" were asserted).

applying the "exceptional circumstances" test should be used in the present case in determining whether Nammacher and Bolte's depositions should be taken. Although Nammacher and Bolte were initially designated as testifying experts and participated in discovery in this matter, they have never issued expert reports or otherwise disclosed their opinions in this case. The Court agrees with the reasoning adopted by the *Netjumper* court that the purpose underlying Rule 26(b)(4)(A), which permits discovery from a testifying expert witness to facilitate cross-examination of that expert and elimination of surprise at trial, is simply not implicated in a case such as this, where Nammacher and Bolte will not testify at trial and have never produced expert reports.[1213] Even though the Eastern District of Louisiana in *Commerce* found it relevant that the re-designation of an expert to consulting status did not occur until after witness lists were exchanged, the court also noted that the deposition of the re-designated expert was permitted because the expert had produced a report before his re-designation and thereby waived the work product protection provided for in Rule 26(b)(4)(B).

**12.** The United States has stipulated in its motion for protective order that Nammacher and Bolte will not be called as expert witnesses at the trial of this matter.

**13.** *Also recall,* Fed.R.Civ.P. 26(b)(4)(A) does not allow the taking of an expert's deposition until after an expert report has been provided.

**14.** Plaintiffs argue that the policies underlying the "exceptional circumstances" test do not apply in this case. First, they contend that, by designating Nammacher and Bolte as testifying experts and providing information to them, the United States "knew that all of the information provided to them would be discoverable by plaintiffs because testifying experts must produce not only their written valuation reports but also the materials that they 'considered' in forming their valuation opinions," including all work-product and attorney-client privileged documents provided to the testifying experts. However, such an argument is inapplicable in the present case where Nammacher and Bolte never issued written valuation opinions or reports before their redesignation as consulting experts.

Plaintiffs also argue that the mere designation of Nammacher and Bolte as experts "whose opinions may be presented at trial" under Rule

Furthermore, the Court does not find that the mere designation of Nammacher and Bolte as testifying witnesses (a designation which the United States reserved the right to amend) and their involvement in discovery (which also could have occurred if they had originally been designated as consulting witnesses) constituted a permanent waiver of the work product protection that could not be revoked if the experts were later re-designated as non-testifying experts. Considering that the majority approach in federal jurisprudence is to allow the work product protection/consultative privilege to be restored, even if a testifying expert witness' designation is withdrawn after his/her opinions have been disclosed, the Court finds that such protection/privilege should likewise be restored in the present case, where Nammacher and Bolte's designations were changed prior to the issuance of any expert reports/opinions by them and where the United States reserved the right to amend their expert designations.[14]

In their opposition to the United States' motion, the plaintiffs only argue that the "balancing test" used in *House* should be applied herein and therefore do not set forth any analysis, much less meet the heavy bur-

26(b)(4)(A) waived any trial preparation or work product privilege with respect to information provided to the experts. However, the Court finds that the majority of the jurisprudence regarding the expert re-designation issue suggests that such a waiver is not permanent and can be restored by re-designating an expert before any expert opinion evidence is offered through production of a report, responses to discovery, or expert testimony. *Green,* at 396. In other words, to constitute a permanent waiver, more than disclosure of the expert's identity and subject matter of his/her testimony is required; the expert must disclose some form of opinion evidence, which has not been done in the present case. (Note: Plaintiffs rely upon the case of *CP Kelco U.S. Inc. v. Pharmacia Corp.,* 213 F.R.D. 176 (D.Del.2003)), for the proposition that parties are not free to invoke an already waived privilege simply by changing the designation of an expert from "testifying" to "non-testifying;" however, *CP Kelco* is distinguishable because, at the time the expert witness' designation was changed from "testifying" to "non-testifying" in that case, the deposition of the testifying expert had already commenced, thereby resulting in a waiver of privilege with respect to the expert's testimony/opinions and documents "considered" in connection with that testimony/opinions.

den, required under the "exceptional circumstances" test of Rule 26(b)(4)(B). "Exceptional circumstances" may be shown if the parties seeking discovery are unable to obtain equivalent information essential to their case preparation from other sources. *Hartford Fire Ins. Co. v. Pure Air on the Lake Ltd.*, 154 F.R.D. 202, 208 (N.D.Ind.1993).[15]

While it has been recognized that "exceptional circumstances" may exist where a non-testifying expert's report has been used by a testifying expert as the "basis" for the testifying expert's opinion, or where there is evidence of "substantial collaborative work" between a testifying expert and a non-testifying

expert, the Court has already determined that, based upon the evidence presented in connection with this motion, any information provided to Jarrell by Nammacher and/or Bolte did not serve as the "basis" for Jarrell's opinions, and Jarrell's report was not the result of "substantial collaborative work" between himself and the non-testifying experts. *Long–Term Capital Holdings*, at \*2; *See also, Herman v. Marine Midland Bank*, 207 F.R.D. 26, 30–32 (W.D.N.Y.2002); *Derrickson v. Circuit City Stores, Inc.*, 1999 WL 1456538, 1999 U.S. Dist. LEXIS 21100, at \*18 (D.Md. March 19, 1999); *Hartford*, at 208.[16] Accordingly, because the plaintiffs

**15.** There are two (2) situations where "exceptional circumstances" are commonly identified: (1) where "the object or condition observed by the non-testifying expert is no longer observable by an expert of the party seeking discovery," and (2) where "it is possible to replicate expert discovery on a contested issue, but the costs would be judicially prohibitive." *Long–Term Capital Holdings, LP v. U.S.*, 2003 WL 21269586 (D.Conn.2003), citing *Bank of Brussels Lambert v. Chase Manhattan Bank*, 175 F.R.D. 34, 45 (S.D.N.Y.1997).

**16.** By contrast, in *Long–Term Capital Holdings*, the non-testifying experts were found to have "spent a disproportionate number of hours working on the collection and analysis of the data underlying the [t]estifying [e]xperts' reports" (*i.e.*, over fifty times the number of hours spent by at least one testifying expert), and the evidence before the court revealed that there was a "seamless collaboration" between the non-testifying and testifying experts in preparing the expert report, such that the depositions of the non-testifying experts were permitted in order to ascertain their "participation in the preparation, drafting, editing and/or revising [of] the expert reports" and "any meetings, telephone calls, or other contacts" between the non-testifying and testifying experts.

In *Derrickson*, where the court held that the non-testifying expert could be deposed, the court found that the testifying expert's opinion was "based" on tables prepared by the non-testifying expert under the general instruction of the non-testifying expert. *Derrickson*, at, 1999 WL 1456538, 1999 U.S. Dist. LEXIS 21100, \*17–18. The district judge specifically concluded that the "fruits of [the testifying and non-testifying experts'] labor [were] indivisible; the '[testifying expert] and [the non-testifying expert] worked hand-in-glove,' " and the testifying expert's opinions were the result of a "seamless collaboration with his assistant." *Id.*, at 1999 WL 1456538, 1999 U.S. Dist. LEXIS 21100, \*18. The court further found that the case was not one "where the testifying expert relied on a single, discrete

written report 'by a non-testifying expert," in which case, the non-testifying expert's report would only need to be produced, and the opposing party was therefore entitled to take the non-testifying expert's deposition to find out what he did. *Id.*

The *Herman* case involved a motion to compel a deposition of an associate and co-author of the expert report at issue. *Herman*, at 30. After finding that the associate performed more than half (½) of the total hours it took to generate the expert report, and accounted for more than half of the expert's fee, the court held that the "fruits of the [expert's] labor [were] indivisible" from the work of the associate; thus, the defendant was entitled to explore what the associate did. *Id.*, at 31.

*Long–Term Capital Holdings, Derrickson*, and *Herman* involve far more extensive involvement by the non-testifying expert in the formulation of the testifying expert's opinion/report than the evidence suggests has occurred in the present case. Considering that Jarrell has already produced to the plaintiffs the written materials provided to him by Nammacher, and Jarrell has represented to opposing counsel and to the Court that such information is the only material provided to him by Nammacher which he "considered" relative to his opinions but upon which he did not rely, the Court does not find that a deposition of Nammacher is necessary in order for the plaintiffs to be able to effectively cross-examine Jarrell during his deposition or at trial. *Compare, Derrickson*, at 1999 WL 1456538, 1999 U.S. Dist. LEXIS 21100, \*18 (where, because of the non-testifying expert's extensive involvement relative to the testifying expert's report, the court held that the defendant could not only depose the non-testifying expert regarding the underlying data but could "also depose and cross-examine [the non-testifying expert] because the [testifying] expert may not be properly cross-examined 'without first understanding how his assistant manipulated the data' " underlying the report.) *Id.*

Based upon the evidence and argument submitted to the Court, the present case is more like

have failed to demonstrate that "exceptional circumstances" exist such that it will be impracticable for them to obtain by other means the information they seek through the depositions of Nammacher and Bolte, their depositions will not be permitted.

Accordingly;

**IT IS ORDERED** that the Motion for a Protective Order Regarding Deposition Subpoenas Issued to Its Non–Testifying Experts (R. Doc. 196) filed by defendant, United States of America, is hereby **GRANTED** and that the depositions of Scott A. Nammacher and C. Clint Bolte will not be permitted.

the scenario in *Lowery v. Circuit City Stores, Inc.,* 158 F.3d 742 (4th Cir.1998), *vacated on other grounds,* 527 U.S. 1031, 119 S.Ct. 2388, 144 L.Ed.2d 790 (1999), where the Fourth Circuit Court of Appeal upheld a district court's denial of discovery of the data produced and developed by other non-testifying consultants underlying the testifying expert's statistical analysis, because the testifying expert submitted a detailed expert report providing supporting reasons and exhib-

its, and because the defendant was able to thoroughly examine the statistical expert about the basis and methods of his analysis. *Id.* at 765. Similarly, in the present case, plaintiffs have failed to present sufficient evidence that Jarrell's opinions are so reliant upon underlying data and information supplied by Nammacher and Bolte that they will be unable to thoroughly examine Jarrell without first deposing Nammacher and Bolte.